IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
:
KATHLEEN KERRIGAN, ANTHONY  :
HOLIDAY, MICHAEL J. McSHEA,   :
TARIQ MANGUM, RENEE CROSBY, and  :
CAROLYN DAVENPORT, on behalf of  :
themselves and all others similarly situated,  :
:
Plaintiffs,   :
:        Civil Action No. 07-CV-687
v.   :
:        Class Action
THE PHILADELPHIA BOARD OF  :
ELECTION and MARGARET M.   :
TARTAGLIONE, EDGAR HOWARD, and  :
JOSEPH DUDA, PHILADELPHIA CITY  :
COMMISSIONERS, in their official capacities,  :
:
Defendants.   :
_____:

## MOTION FOR CLASS CERTIFICATION

Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), Plaintiffs, through their

counsel, submit this Motion for Class Certification.  Plaintiffs respectfully request the Court to

certify the case to proceed on behalf of the following class:

> All eligible Philadelphia County voters with mobility disabilities
> who either became eligible to vote or developed a mobility
> disability after October 22, 2001.

In support of this Motion, Plaintiffs submit the accompanying Memorandum of Law and

Exhibits, which are incorporated by reference in this Motion

Respectfully submitted,

Dated: April 30, 2007  By: /s/ Robert W. Meek
         Robert W. Meek
         Attorney I.D. No. 27870
         Robin Resnick
         Attorney I.D. No. 46980
         Disabilities Law Project
         1315 Walnut Street, Suite 400
         Philadelphia, PA  19107-4798
         (215) 238-8070

        By: /s/ Stephen F. Gold
         Stephen F. Gold
         Attorney I.D. No. 09880
         125 South Ninth Street
         Suite 700
         Philadelphia, PA  19107
         (215) 627-7100

        By: /s/ Seth Kreimer
         Seth Kreimer
         3400 Chestnut Street
         Philadelphia, PA  19104

         Attorneys for Plaintiffs

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

                               :

KATHLEEN KERRIGAN, ANTHONY      :
HOLIDAY, MICHAEL J. McSHEA,       :
TARIQ MANGUM, RENEE CROSBY, and  :
CAROLYN DAVENPORT, on behalf of    :
themselves and all others similarly situated,  :
                               :

                Plaintiffs,     :
                               :     Civil Action No. 07-CV-687

        v.                   :
                               :     Class Action

THE PHILADELPHIA BOARD OF       :
ELECTION and MARGARET M.        :
TARTAGLIONE, EDGAR HOWARD, and  :
JOSEPH DUDA, PHILADELPHIA CITY  :
COMMISSIONERS, in their official capacities,  :
                               :

                Defendants.    :

_____:

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs, through their counsel, submit this Memorandum of Law in support of their

Motion for Class Certification.  Plaintiffs respectfully request the Court to certify the case to

proceed on behalf of the following class:

> All eligible Philadelphia County voters with mobility disabilities
> who either became eligible to vote or developed a mobility
> disability after October 22, 2001.

The criteria of Federal Rules of Civil Procedure 23(a) and 23(b)(2) are satisfied in this case,

making class certification appropriate.

## FACTUAL BACKGROUND

Plaintiffs Kathleen Kerrigan, Anthony Holiday, Michael J. McShea, Tariq Mangum, Renee Crosby, and Carolyn Davenport are registered Philadelphia voters who have mobility disabilities that require them to use wheelchairs to ambulate.  Compl. ¶¶ 7-12.[1]  The Plaintiffs either developed their mobility disabilities or became registered to vote after October 22, 2001.  *Id.*  The Plaintiffs want to vote in their local polling places in the same manner as their non-disabled neighbors.  *Id.* ¶ 21.  The Plaintiffs, however, all are assigned to polling places that are not accessible to individuals with mobility disabilities who use wheelchairs because there are steps to reach the polling machines.  *Id.* ¶¶ 7-12.[2]  As a result, Plaintiffs Kerrigan, Holiday, McShea, and Mangum, and Davenport have been unable to vote in their local polling places with their neighbors.  *Id.* ¶¶ 7-10, 12.  Plaintiff Crosby was able to reach the polling machines in her polling place only by using her crutches, a much more arduous and painful means of ambulation for her than using her wheelchair.  *Id.* ¶ 11.

---

[1]  For purposes of class certification, the Court must accept as true the allegations in the Complaint.  *Danvers Motor Co., Inc. v. Ford Motor Co.*, Civil Action No. 02-2197 (DMC), 2007 WL 419285 at *7 (D.N.J. Jan. 31, 2007); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 393 (E.D. Pa. 2001).

[2]  Defendants have identified Plaintiff McShea's polling place as "accessible," but the polling machines are located in a basement accessed by three steps and not in the accessible garage.  Compl. ¶ 9.  Poll workers have carried Mr. McShea down the steps, placing both him and them at risk.  *Id.* Plaintiff Davenport's polling place has a side entrance that is accessible, but it was locked in the November 2006 election and there was no signage at the front entrance indicating that an accessible alternative existed.  *Id.* ¶ 12.

2

Defendants, the Philadelphia Board of Election and the City Commissioners, are responsible for selecting polling places in the City of Philadelphia. Compl. ¶¶ 13, 14. Philadelphia has more than 1,600 polling places. *Id.* ¶ 23. This large number of polling places enables Philadelphians to vote at convenient locations near their homes in the company of their friends and neighbors. Neighborhood voting provides individuals with more than an opportunity to cast their ballots. It also provides them with the opportunity to meet and speak with election and party officials who serve their neighborhoods, as well as to discuss the elections with neighbors at their polling places and receive information from the candidates.

Although a Settlement Agreement in a prior, related lawsuit, *National Organization on Disability v. Tartaglione*, Civil Action No. 01-1923 (E.D. Pa.), resulted in significant progress toward the reduction of inaccessible polling places, more than 400 Philadelphia polling places remain inaccessible. *See* Compl. ¶ 24. Plaintiffs and other voters do not have the option to unilaterally select an alternative accessible polling places of their choice. *Id.* ¶ 23. Defendants assign each registered voter in the City to a ward and a division based on where she lives. *Id.* The voter is required to vote in the polling place to which the Defendants have assigned her, regardless of whether it is accessible or inaccessible. *Id.*

For Philadelphia voters with mobility disabilities who are assigned to an inaccessible polling place, the primary means by which they can vote is the alternative ballot process. *See* City of Philadelphia, *Absentee Ballots* at 2, *available at* http:// www.philllyelection.com/ abeng.htm. (Exh. A). The alternative ballot process places burdens and intrusions upon individuals with mobility disabilities that are not imposed on non-disabled persons and that individuals

3

with mobility disabilities would not have to endure if their assigned neighborhood polling places were physically accessible.

- Individuals with disabilities must submit an application for an alternative ballot no later than 7 days prior to the election. *Absentee Ballots* at 2. Individuals with mobility disabilities assigned by Defendants to inaccessible polling places must decide a week before the election whether they want to vote and lose the option to decide to vote based on events that occur in the week preceding the election.

- Alternative ballots must be returned to the County Board of Elections no later than the close of polls at 8:00 p.m. on Election Day. *Id.* Ballots postmarked on Election Day will not be honored. *Id.* This means that the voter either (1) must vote in advance of Election Day to mail the alternative ballot so that it is received no later than Election Day, or (2) must arrange for transportation on Election Day to the Board of Elections at City Hall -- a far greater distance for most voters than their assigned neighborhood polling place.

- To apply for an alternative ballot, a voter uses the Pennsylvania Absentee Ballot Application and checks "Illness or Physical Disability." *See* City of Philadelphia, *Information Statement on Access to the Election Process for People with Disabilities in the City of Philadelphia* (hereafter "*Information Statement*") at 1, *available at* http://www.phillyelection.com/aceng.htm (Exh. B). An individual who checks that box must divulge the nature of his physical illness or disability as well as the name, address, and phone number of his physician. Pennsylvania Dep't of State,

4

*Application for Absentee Ballot*, a*vailable at* http://www.dos.state.pa.us/

voting/lib/voting/02_voter_registration_applications/absenteeballot/

absentee_ballot_application_(08-13-04).pdf (Exh. C); *see also* 25 Pa. Cons. Stat.

Ann. § 3146.2(e)(2).  If the voter is physically unable to sign the declaration, then

he must mark his form and have a witness attest to that mark. *Application for*

*Absentee Ballot*; *see also* 25 Pa. Cons. Stat. Ann. § 3146.2(e)(2).[3]

- ■ Alternative ballots *cannot* be used by individuals with mobility disabilities if the

   Board of Elections has determined that their polling places are accessible even if,

   in fact, they are not accessible.  *See Absentee Ballots* at 2.  It is, therefore, not

   even clear that Plaintiff McShea, whose polling place is incorrectly designated as

   "accessible," would be permitted to vote by alternative ballot.

With some changes by Defendants, many Philadelphians with mobility disabilities who

currently cannot vote in their neighborhoods could have equal opportunity to vote in the same

way as non-disabled persons, eliminating the burdens and intrusions imposed by the alternative

voting process.  Many of the remaining inaccessible polling places -- with simple modifications

-- could be made accessible.  Compl. ¶ 26.  For example, Plaintiff Davenport's polling place has

an accessible side entrance, but that entrance was locked on Election Day.  *Id.* ¶ 12.  If

---

[3] Although Defendants permit use of Pennsylvania's Absentee Ballot Application to apply for an alternative ballot, they have also created their own application form that can be used to seek an alternative ballot. *See Information Statement* at 1.  Defendants' application is virtually identical in all significant respects to Pennsylvania's application except that the applicant checks "C" instead of "B" if she has an illness or physical disability.  Philadelphia County Bd. of Elections, *Absentee/ Alternative Ballot Application* (Exh. D).  Defendants' application, like Pennsylvania's, requires the voter to reveal the nature of her disability and the identity of her doctor and, if unable to sign, to have witnesses attest to her mark. *Id.*

Defendants merely unlocked that side door and placed signage at the front door to inform voters that the side entrance could be used by people with mobility disabilities, the polling place would be accessible.  Many inaccessible polling places that cannot be made even temporarily accessible with modifications (such as temporary ramps) could be moved to accessible locations.  *Id.* ¶ 25.

Defendants have failed to ensure that voters with mobility disabilities, such as the named Plaintiffs, are able to vote independently in accessible, integrated polling places in the same manner as their non-disabled neighbors.  Compl. ¶¶ 21, 22, 27.  Defendants continue to select and use polling places that are inaccessible to voters with mobility disabilities.  *Id.* ¶ 28.  Defendants even have permitted individuals to effectively veto their decisions to move inaccessible polling places to accessible locations.  *Id.* ¶ 36.

Plaintiffs contend that Defendants' failure to take reasonable steps to make their polling places accessible violates Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794.  Compl. ¶¶ 31-40.  Plaintiffs seek appropriate declaratory and injunctive relief.  *Id.* ¶ 41.

## ARGUMENT

### I. PLAINTIFFS SATISFY THE PREREQUISITES OF FEDERAL RULE OF CIVIL PROCEDURE 23(a).

"In determining whether the class should be certified, the Court examines only the requirements of Rule 23 and does not look at whether the Plaintiffs will prevail on the merits." *National Organization on Disability v. Tartaglione*, Civil Action No. 01-1923, 2001 WL 1258089 at *2 (E.D. Pa. Oct. 22, 2001).  Even "[w]hen doubt exists concerning certifica-

tion of the class, the court should err in favor of allowing the case to proceed as a class action." *Id.*

Federal Rule of Civil Procedure 23(a) establishes four requirements, each of which must be satisfied for the maintenance of a class action:

> (1)   the class must be so numerous that joinder of all members is impracticable;
>
> (2)   there must be a question of law or fact common to the class;
>
> (3)   the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and,
>
> (4)   the representative parties must fairly and adequately protect the interests of the class.

This case satisfies each of these requirements.

### A.  The Proposed Class Is So Numerous that Joinder of All Members Is Impracticable.

Rule 23(a)(1) requires that the class must be so numerous that joinder of all class members would be impracticable.  "Impracticability does not mean impossibility, but rather that the difficulty or inconvenience of joining all members of the putative class calls for class certification." *Cureton v. National Collegiate Athletic Ass'n*, Civil Action No. 97-131, 1999 WL 447313 at *5 (E.D. Pa. July 1, 1999); *accord In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 295 (D. Del. 2003).  As the Third Circuit has written:  "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a)

has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001), *cert. denied*, 536

U.S. 958 (2002); *see also Serventi v. Bucks Technical High School*, 225 F.R.D. 159, 165

(E.D. Pa. 2004) (evidence of at least 47 class members satisfied numerosity requirement).

Rule 23 "does not require 'any particular number or require that joinder of all members be

impossible, so long as a good faith estimate of the number of class members is provided.'"

*National Organization on Disability v. Tartaglione*, 2001 WL 1258089 at *2.

The proposed class in this case is comprised of eligible Philadelphia voters with mobility

disabilities who either developed a mobility disability or became eligible to vote after October

22, 2001.[4]  While it is impossible to state with precision the exact number of class members, a

good faith estimate can be made.

- There are approximately 22,000 live births in Philadelphia each year.  *See*
  Pennsylvania Bureau of Health Statistics, *Philadelphia County Health Profile
  2000*, *available at* http://www.health.state.pa.us/stats (Exh. F).  This would mean
  that roughly 22,000 Philadelphians turn 18 (and thus become eligible to vote)

---

[4] On October 22, 2001, this Court certified a class in *National Organization on Disability v. Tartaglione*, including a mobility disability subclass defined as "all mobility impaired individuals, including those that use a wheelchair to ambulate, and who are registered to vote in the City of Philadelphia." *National Organization on Disability v. Tartaglione*, 2001 WL 1258089 at *5.  As defined, therefore, the mobility disability subclass consisted only of those individuals who -- as of the date of certification -- were registered to vote and had mobility disabilities.  This Court subsequently denied a motion to certify a settlement class that would have substantially expanded the mobility disability subclass to include all future eligible voters with mobility disabilities.  *See National Organization on Disability v. Tartaglione*, Order ¶ 4 (E.D. Pa. Nov. 19, 2004) (Exh. E).  The named Plaintiffs and putative class members either did not have mobility disabilities or were not eligible to vote until after October 22, 2001.  Compl. ¶¶ 7-12, 15. As such, they are not members of the *National Organization on Disability* mobility disability subclass and are not bound by any prior agreements in that case.

each year.  Thus, in the four and one-half years since October 22, 2001, approximately 99,000 Philadelphians became eligible to vote.

- ■ Approximately 3 percent of the population are individuals who have "major" mobility problems, defined as an inability to walk or climb stairs or stand or the use of wheelchair or scooter.  *See* Lisa I. Iezzoni, *et al.*, *Mobility Impairments and the Use of Screening and Preventative Services*, 90 Am. J. Pub. Health 955, 956 (June 2000) (Exh. G).

- ■ Accordingly, approximately 2,970 Philadelphians who became eligible to vote since October 22, 2001 (3 percent of the 99,000 newer voters) would likely have a major mobility disability.

- ■ In addition to the approximately 2,970 newly eligible voters who have mobility disabilities, the class also includes individuals who were eligible to vote prior to October 22, 2001, but who did not develop mobility disabilities until after that date.  Although this number is unknown, it would certainly increase the number of class members.

Factors in addition to the size of the class -- including the ability of class members to pursue individual cases, the expediency of joinder, and the practicality of multiple lawsuits -- can also militate in favor of certification.  *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *In re DaimlerChrysler AG Securities Litig.*, 216 F.R.D. at 295; *Colorado Cross-Disability Coalition v. Taco Bell Corp.*, 184 F.R.D. 354, 358-59 (D. Colo. 1999); *Cureton*, 1999 WL 447313 at *6; *Metts v. Houstoun*, Civil Action No. 97-4123, 1997 WL 688804 at *2 (E.D. Pa.

9

Oct. 22, 1997). Here, potential class members are unlikely to have either the financial or time resources necessary to pursue individual actions. In addition, identifying the potential class members, filing multiple lawsuits, and joining them would not be practical. These factors, combined with the large size of the class, make joinder impracticable and are more than sufficient to satisfy Rule 23(a)(1).

**B.**  **There Are Questions of Law and Fact Common to Plaintiffs and the Class.**

Rule 23(a) also requires questions of law and fact common to the class. The commonality requirement does not mandate that all class members have identical claims, but merely that they have common claims. *See Hassine v. Jeffes*, 846 F.2d 169, 176-77 n.4 (3d Cir. 1988). The Third Circuit has recognized that "the commonality standard of Rule 23(a)(2) is not a high bar: it does not require identical claims or facts among class members, as the 'commonality requirement will be satisfied if the named plaintiffs share at least one question of law or fact with the grievances of the prospective class.'" *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004) (citation omitted); *accord Stewart v. Abraham*, 275 F.3d at 227; *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *National Organization on Disability v. Tartaglione*, 2001 WL 1258089 at *3.

"Courts appear to consider 'common' such challenges based on alleged violations of statutory standards." *Baby Neal*, 43 F.3d at 56-57. Further, "because they do not also involve an individualized inquiry for the determination of damage awards, injunctive actions 'by their very nature often present common questions satisfying Rule 23(a)(2).'" *Id.* at 57 (citations omitted); *accord National Organization on Disability v. Tartaglione*, 2001 WL 1258089 at *3.

10

Here, there are a number of factual and legal issues common to Plaintiffs and all class members, including:

- Can the remaining inaccessible Philadelphia polling places be made accessible (*e.g.*, by using temporary ramps)?

- Can the remaining inaccessible Philadelphia polling places be moved to accessible locations?

- Have Defendants allowed local party or election officials or others to veto Defendants' decisions to relocate inaccessible polling places to accessible locations?

- Do Defendants violate the ADA and RA by excluding Plaintiffs and class members from the voting process?

- Do Defendants violate the ADA and RA by failing to afford Plaintiffs and class members equal opportunity to participate in the voting process?

- Do Defendants violate the ADA and RA by using methods of administration that have the effect of discriminating against Plaintiffs and class members and/or that substantially impair the objectives of Defendants' program with respect to individuals with mobility disabilities?

- Do Defendants violate the ADA and RA by selecting sites for polling places that exclude Plaintiffs and class members from the voting process and/or that substantially impair the accomplishment of Defendants' objectives with respect to individuals with mobility disabilities?

- Do Defendants violate the ADA and RA by failing to make reasonable modifications to their policies, practices, and procedures necessary to avoid discriminating against Plaintiffs and class members?

- Do Defendants violate the ADA and RA by failing to make their services available to Plaintiffs and class members in the most integrated setting appropriate to their needs?

- Do Defendants violate the ADA's and RA's program accessibility mandates?

11

This Court determined that virtually identical factual and legal issues were sufficient to satisfy the commonality requirement for certification of the mobility disability subclass in *National Organization on Disability v. Tartaglione*, 2001 WL 1258089 at *3; *cf. Chiang v. Veneman*, 385 F.3d at 265-66 (finding commonality in case involving various discrimination claims); *Serventi v. Bucks Technical High School*, 225 F.R.D. at 165 (issues as to whether defendants' policies and practices violated ADA and RA satisfied commonality standard); *T.B. v. School Dist.*, Civil Action No. 97-5453, 1997 WL 786448 at *3-*4 (E.D. Pa. Dec. 1, 1997) (finding commonality, despite differences among class members, where there were common legal issues); *Maldonado v. Houstoun*, 177 F.R.D. 311, 320-21 (E.D. Pa. 1997) (finding commonality satisfied where there were common legal questions), *aff'd on other grounds*, 157 F.3d 179 (3d Cir. 1998), *cert. denied*, 526 U.S. 1130 (1999).  Accordingly, Rule 23(a)(2) is satisfied in this case.

## C.  <u>Plaintiffs' Claims Are Typical of Those of Class Members.</u>

Plaintiffs have also satisfied Rule 23(a)(3)'s typicality requirement.  "Typicality entails an inquiry [into] whether 'the named Plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of the other class members will perforce be based.'" *Baby Neal*, 43 F.3d at 57-58 (citation omitted); *accord National Organization on Disability v. Tartaglione*, 2001 WL 1258089 at *3.  "Typicality, as with commonality, does not require 'that all putative class members share identical claims.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531-

32 (3d Cir. 2004) (citation omitted).  Claims which challenge conduct that affects the named Plaintiffs as well as the class members, such as the claims in the instant case, "usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims....  Actions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly fit this mold." *Baby Neal*, 43 F.3d at 58; *accord Stewart v. Abraham*, 275 F.3d at 227.

Plaintiffs' and class members' claims in this case arise from the same policies and practices and are based on the same legal theory, which this Court has previously determined to be sufficient to satisfy the typicality requirement, *i.e.*, "the failure of Defendants to select neighborhood polling places which are accessible to voters who use wheelchairs" in violation of the ADA and RA.  *National Organization on Disability v. Tartaglione*, 2001 WL 1258089 at *3; *cf. Serventi v. Bucks Technical High School*, 225 F.R.D. at 165 (plaintiffs' claims that they were denied access to vocational education programs available to non-disabled plaintiffs in violation of ADA and RA met typicality requirement).  Plaintiffs' claims for declaratory and injunctive relief to remedy Defendants' violations of the RA and ADA is typical of the putative class members' claims since they are "'based on patterns and practices not special or unique to [Plaintiffs,] [and] a significant number of other members of the class have been similarly victimized by the same patterns or practices.'"  *Cureton*, 1999 WL 447313 at *8 (quoting *Weiss v. York Hosp.*, 745 F.2d 786, 809 n.36 (3d Cir. 1984)).  Plaintiffs and class members are all

13

"victims of the same systemic failures." *T.B.*, 1997 WL 786448 at *5.  Rule 23(a)(3) is therefore satisfied.[5]

## D.  The Named Plaintiffs Will Fairly and Adequately Represent the Interests of the Class.

Rule 23(a)(4) requires that the named representatives fairly and adequately protect the interests of the class.  This requirement has two components to assure that the absent class members' interests are fully pursued:  (1) the interests of the named representatives are not in conflict with other class members, and (2) plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 532; *Hassine*, 846 F.2d at 179; *National Organization on Disability v. Tartaglione*, 2001 WL 1258089 at *4.

Here, Plaintiffs and members of the class share the same injuries and seek the same relief -- declaratory and injunctive relief to end Defendant's violations of the ADA and RA.  *See Serventi v. Bucks Technical High School*, 225 F.R.D. at 165.  "Because the plaintiffs seek the same injunctive relief as all members of the class, the court 'can find no potential for conflict between the claims of the complainants and those of the class as a whole.'"  *Metts*, 1997 WL 688804 at *4 (quoting *Hassine*, 846 F.2d at 179).  In addition, Plaintiffs' counsel are qualified and experienced in federal class action litigation, the rights of individuals with disabilities, the

---

[5]  This Court rejected arguments in *National Organization on Disability v. Tartaglione* that typicality was defeated because (1) not all class members of the mobility disability subclass were assigned to inaccessible voting place; and (2) some of the named plaintiffs had voted.  2001 WL 1258089 at *3-*4.  "The potential factual differences mentioned by Defendants are too slight to warrant a finding that the proposed subclasses of visually and mobility impaired voters do not satisfy the typicality requirement ...."  *Id.* at *4.

ADA, and the RA.  Stephen F. Gold and Robert W. Meek, respectively, have approximately 35

years and 30 experience as civil rights attorneys with expertise in disabilities law and class

litigation and have litigated numerous cases to enforce the ADA and RA.  *See National*

*Organization on Disability v. Tartaglione*, Civil Action No. 01-1923, 2001 WL 1258089 at *3

(E.D. Pa. Oct. 22, 2001) (Stephen F. Gold and DRN attorney adequate to represent class in case

under the ADA and RA); *Anderson v. Dep't of Public Welfare*, 1 F. Supp.2d 456, 462 (E.D. Pa.

1998) (same); *Kathleen S. v. Dep't of Public Welfare*, Civil Action No. 97-6610, 1998 WL 83973

at *3 (E.D. Pa. Feb. 25, 1998) (Robert W. Meek adequate to represent class in ADA case); *Metts*,

1997 WL 688804 at *4 (Mr. Gold and DRN adequate to represent class).[6]  Seth Kreimer, a

professor at the University of Pennsylvania School of Law for more than 25 years, also has

significant as counsel in a variety of complex civil rights actions.  Accordingly, the requirements

of Rule 23(a)(4) are satisfied.

## II.  THIS ACTION IS MAINTAINABLE AS A CLASS ACTION UNDER RULE 23(b)(2) SINCE DEFENDANT HAS ACTED OR REFUSED TO ACT ON GROUNDS GENERALLY APPLICABLE TO THE CLASS.

In addition to meeting the requirements of Rule 23(a), a party seeking class certification

also must establish that the case falls into at least one of the three Rule 23(b) categories.

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Rule 23(b)(2) allows a class

action to be maintained if:  "the party opposing the class has acted or refused to act on grounds

generally applicable to the class, thereby making appropriate final injunctive relief or

---

[6] The Disability Rights Network of Pennsylvania (DRN) is the successor organization to the Disabilities Law Project, which merged in February 2007 with Pennsylvania Protection and Advocacy.

corresponding declaratory relief with respect to the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). "[I]t is generally recognized that civil rights actions seeking relief on behalf of classes ... normally meet the requirements of Rule 23(b)(2)." *Stewart v. Abraham*, 275 F.3d at 228; *accord Baby Neal*, 43 F.3d at 59; *National Organization on Disability v. Tartaglione*, 2001 WL 1258089 at *5; *Maldonado*, 177 F.R.D. at 322.

This action readily meets the requirements of Rule 23(b)(2). Plaintiffs, through this case, seek to define the Defendants' obligations under the ADA and RA to assure that people with mobility disabilities are no longer subject to discrimination because they do not have equal access to use the same voting process as non-disabled persons. Plaintiffs seek solely declaratory and injunctive relief to assure that Defendants select and use accessible polling places. This Court found that virtually identical ADA and RA claims satisfied Rule 23(b)(2). *National Organization on Disability v. Tartaglione*, 2001 WL 1258089 at *5; *cf. Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997) (upholding class certification in ADA case challenging inaccessibility of voting system), *cert. denied*, 522 U.S. 1052 (1998); *Serventi v. Bucks Technical High School*, 225 F.R.D. at 166 (certifying class in ADA and RA claim challenging discriminatory policies at vocational school). This case, too, presents a paradigmatic lawsuit for class certification.

16

## **CONCLUSION**

For all the reasons set forth above, Plaintiffs respectfully request that the Court certify this case to proceed as a class action.

Respectfully submitted,

Dated: April 30, 2007     By:     /s/ Robert W. Meek
Robert W. Meek
Attorney I.D. No. 27870
Robin Resnick
Attorney I.D. No. 46980
Disabilities Law Project
1315 Walnut Street, Suite 400
Philadelphia, PA  19107-4798
(215) 238-8070

By:     /s/ Stephen F. Gold
Stephen F. Gold
Attorney I.D. No. 09880
125 South Ninth Street
Suite 700
Philadelphia, PA  19107
(215) 627-7100

By:     /s/ Seth Kreimer
Seth Kreimer
3400 Chestnut Street
Philadelphia, PA  19104
(215) 898-7447

Attorneys for Plaintiffs

17

## CERTIFICATE OF SERVICE

I, Robert W. Meek, certify that the foregoing Motion for Class Certification, Memorandum of Law  and Exhibits in Support of that Motion, and proposed Order were filed with the Court's ECF system on April 30, 2007 and are available for viewing and downloading from the ECF system by the following counsel who consented to electronic service:

Abbe F. Fletman, Esquire
Tara S. Parvey, Esquire
Flaster/Greenberg, P.C.
Eight Penn Center, 15th Floor
1628 John F. Kennedy Boulevard
Philadelphia, PA  19103


/s/ Robert W. Meek
Robert W. Meek