IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN KERRIGAN, ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE PHILADELPHIA BOARD | : | |
| OF ELECTION, ET AL. | : | NO. 07-687 |

<u>MEMORANDUM</u>

**Padova, J.**                                                                                                **January 29, 2008**

Plaintiffs, individuals with mobility disabilities who are registered to vote in the City of Philadelphia, have brought this action against the Philadelphia Board of Elections[1] and the Commissioners of the City of Philadelphia in charge of elections, alleging that Defendants have violated their civil rights under Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12131-12134, and § 504 of the Rehabilitation Act of 1973 (the "RA"), 29 U.S.C. § 794(a), by denying them equal and integrated access to neighborhood polling places in Philadelphia. Currently before us is Defendants' Motion to Dismiss the Complaint. For the reasons that follow, the Motion is denied.

**I.     BACKGROUND**

The six named Plaintiffs in this action are Philadelphia residents with mobility disabilities who are registered to vote and would like to vote at their assigned neighborhood polling places. (Compl. ¶ 1.) They claim that they are unable to do so because those polling places are inaccessible to individuals with mobility disabilities. (Id. ¶¶ 7-12.) The Complaint alleges that more than 400 of Philadelphia's 1600 polling locations are not accessible to persons with mobility impairments who

---

[1]The Philadelphia Board of Elections was incorrectly designated as the "Philadelphia Board of Election" in the Complaint.

cannot readily walk up and down steps and that Defendants have failed to select and provide accessible polling places, in violation of Title II of the ADA and § 504 of the RA. (Id. ¶¶ 3-4.) Plaintiffs seek declaratory and injunctive relief to require Defendants to make all polling places accessible to voters with mobility disabilities. (Id.)

The Complaint alleges that each Plaintiff is a qualified individual with a disability as defined in the ADA and RA. (Id. ¶ 31.) In order for a mobility impaired individual to vote in person, his or her neighborhood polling place must have an accessible path of travel to an accessible voting machine. (Id. ¶ 27.) Plaintiff Kerrigan is registered to vote and has used a wheelchair since 2003. (Id. ¶ 7.) She has been assigned to a polling place that is inaccessible because it has steps. (Id.) Plaintiff Holiday uses a wheelchair and has been registered to vote since 2004. (Id. ¶ 8.) He has been assigned to a polling place that is inaccessible because it has steps. (Id.) Plaintiff McShea is registered to vote and has used a wheelchair since 2004. (Id. ¶ 9.) He has been assigned to a polling place that is listed as an accessible garage but voting actually takes place in a basement that is inaccessible because it has steps. (Id..) Plaintiff Mangum became eligible to vote in 2006 and became disabled in 2006. (Id. ¶ 10.) He uses a wheelchair and has been assigned to a polling place that is inaccessible because it has steps. (Id.) Plaintiff Crosby is registered to vote and began using a wheelchair in 2006. (Id. ¶ 11.) She has been assigned to a polling place that is inaccessible because it has steps. (Id.) Plaintiff Davenport is registered to vote and recently started using a motorized wheelchair. (Id. ¶ 12.) She has been assigned to a polling place that uses an entrance that is inaccessible due to steps. (Id.) The polling place Davenport has been assigned to has an accessible entrance, but that entrance was locked for the November 2006 election. (Id.) Plaintiffs have brought this lawsuit as a class action on behalf of all persons who are residents of Philadelphia

County who are (1) eligible to vote, (2) have mobility impairments that prevent them from gaining independent access to vote in inaccessible neighborhood polling places, and (3) either became eligible to vote or developed a mobility disability after October 22, 2001.  (Id. ¶ 15.)

The Complaint further alleges that Philadelphia County has 66 wards, each of which are divided into multiple divisions, each of which is assigned a unique polling place.  (Id. ¶ 23.)  There are more than 1600 polling places in Philadelphia.  (Id.)  Defendants assign voters to a ward and division based on their residence.  (Id.)  Registered voters are required to vote in the polling places to which they have been assigned by Defendants.  (Id.)  As a result of a previous lawsuit, hundreds of inaccessible neighborhood polling places have been relocated to accessible locations or ramped with permanent or temporary ramps using federal funds.  (Id. ¶ 24.)  However, there are still more than 400 inaccessible polling places.  (Id.)  Many of these inaccessible polling places could have been moved to accessible locations or could be made accessible with simple modifications.  (Id. ¶¶ 25-26.)

The Complaint asserts the following seven claims: (1) Defendants have discriminated against Plaintiffs, and the members of the class they seek to represent, based on their mobility disabilities by excluding them from participation in, and denying them the benefits of, their services, programs, and activities, specifically access to polling places and the voting process in a manner that is available to non-disabled people, in violation of the ADA, 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(a), and the RA, 29 U.S.C. § 794 (Id. ¶ 34); (2) Defendants have denied or failed to afford to Plaintiffs and class members the opportunity to participate in and benefit from their services, programs, and activities, specifically voting in polling places in the same manner as non-disabled people, on the basis of their mobility disabilities, in violation of the ADA, 42 U.S.C. § 12132 and

28 C.F.R. § 35.130(b)(1), and the RA, 28 C.F.R. § 794 (Id. ¶ 35); (3) Defendants have used methods of administration that have the effect of subjecting individuals with mobility disabilities to discrimination based on those disabilities, specifically allowing certain people to veto decisions to move inaccessible polling locations to accessible polling locations, thereby defeating or substantially impairing the accomplishments of the program's objectives to facilitate voting in violation of the ADA, 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(3), and the RA, 29 U.S.C. § 794 (Id. ¶ 36); (4) Defendants have located polling places in a manner that excludes individuals with mobility disabilities from the benefits of Defendants' programs, services or activities, specifically providing access to polling places and the voting process, and have had the effect of defeating or substantially impairing the objectives of those programs, services or activities in violation of the ADA, 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(4), and the RA, 29 U.S.C. § 794 (Id. ¶ 37); (5) Defendants have failed to make reasonable modifications in their policies, practices and procedures concerning inaccessible polling places that are necessary to avoid discrimination against individuals with mobility disabilities, in violation of the ADA, 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(7), and the RA, 29 U.S.C. § 794 (Id. ¶ 38); (6) Defendants have failed to administer their services, programs and activities, specifically providing access to polling places and the voting process, in the most integrated setting appropriate to the needs of individuals with mobility disabilities, in violation of the ADA, 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(d), and the RA, 29 U.S.C. § 794 (Id. ¶ 39); and (7) Defendants have failed to assure that each polling place is readily accessible to and usable by individuals with mobility disabilities, in violation of the ADA, 42 U.S.C. § 12132 and 28 C.F.R. § 35.150, and the RA, 29 U.S.C. § 794 (Id. ¶ 40). Defendants have moved to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the Plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). However, the court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'" California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126,143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist.,132 F.3d 902, 906 (3d Cir. 1997)). A Rule 12(b)(6) motion will be granted when a Plaintiff cannot prove any set of facts, consistent with the complaint, which would entitle him or her to relief. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

## III. DISCUSSION

Defendants assert three grounds for dismissal of the Complaint. Defendants argue that the ADA and RA do not require that each of Philadelphia's 1600 polling places be accessible to voters with mobility disabilities and that the City complies with the ADA and RA by making the program of voting accessible. Defendants further argue that the Voting Accessibility for the Elderly and Handicapped Act (the "VAEH"), 42 U.S.C.A. § 1973ee, *et seq.*, and the Help America Vote Act ("HAVA"), 42 U.S.C. § 15301, *et seq.*, take precedence over the ADA and RA and neither the VAEH nor HAVA require that each of Philadelphia's polling places be accessible. Defendants also argue that this action is barred by the January 9, 2007 settlement agreement entered into by the parties to Nat'l Org. on Disability v. Tartaglione, Civ. A. No. 01-1923 (E.D. Pa.) ("Tartaglione").

A.     **Program Accessibility**

Access to polling places constitutes a service, program, or activity for purposes of Title II of the ADA.  See Meadows v. Hudson County Bd. of Elections, Civ. A. No. 04-3979, 2006 U.S. Dist. LEXIS 64050, at *14 (D.N.J. Aug. 24, 2006) (noting that "access to polling places constitutes a service, program, or activity") (citing People of New York ex rel. Spitzer v. County of Delaware, 82 F. Supp. 2d 12, 17-18 (N.D.N.Y. 2000))).  However, Defendants contend that the Complaint should be dismissed because the ADA and RA require "only that Plaintiffs be allowed to participate in the activity of voting, not that each and every polling place be accessible."  (Defs. Mem. at 7.) Defendants rely on Am. Assoc. of People with Disabilities v. Shelley, 324 F. Supp. 2d 1120 (C.D. Ca. 2004), which examined whether the California Secretary of State's decertification of certain electronic voting machines (the "DREs") violated the ADA by preventing some visually and manually disabled voters from voting independently via those voting machines.  Id. at 1123-25.  The court denied plaintiffs' motion for a preliminary injunction because the evidence did not "support the conclusion that the elimination of the DREs would have a discriminatory effect on the visually or manually impaired."  Id. at 1126.  The court went on to note that "the ADA does not require accommodation that would enable disabled persons to vote in a manner that is comparable in every way with the voting rights enjoyed by persons without disabilities. Rather, it mandates that voting programs be made accessible, giving a disabled person the opportunity to vote."  Id.  We find that Shelley is inapplicable to the instant case, as the Shelley court did not consider whether the failure to provide accessible polling places violated the ADA and RA but rather considered, in the context of a motion for preliminary injunction, whether the plaintiff had made a sufficient showing that the elimination of certain voting machines would discriminate against certain visually and manually

6

impaired voters. See Meadows v. Hudson County Bd. of Elections, Civ. A. No. 04-3979, 2006 U.S. Dist. LEXIS 64050, at *30 n.4 (D.N.J. Aug. 24, 2006) (rejecting Hudson County's reliance on Shelley in defense of Meadows' claim that she had been denied the right to vote in violation of the ADA because she had been assigned to an inaccessible polling place).

Defendants also rely on N.A.A.C.P. v. Philadelphia Bd. of Elections, Civ. A. No. 97-7085, 1998 WL 321253 (E.D. Pa. 1998), in which the district court stated that Defendants' use of alternative ballot procedures is a reasonable modification to comply with the ADA and fulfills their obligations under the ADA. Id. at *3. The issue in N.A.A.C.P. was whether the City of Philadelphia could use its alternative ballot procedures, promulgated to comply with the VAEH, in state and local elections. The N.A.A.C.P. argued that the alternative ballot procedures should not be used in non-federal elections because they create the opportunity for fraud. Id. at *5. Defendants countered that they were using the procedures to comply with their obligations under the ADA. Id. at *3. The court concluded that: "Defendants are not required to provide the specific procedure authorized under the VAEH, but the decision to do so is a reasonable modification to comply with the ADA and 28 C.F.R. § 35.130(b)(7)." Id. at *4. However, the specific issue at the center of this case, whether the ADA requires Defendants to take additional steps to avoid discrimination and provide equal access to the voting process, was not before the N.A.A.C.P. court. Consequently, N.A.A.C.P. v. Philadelphia Bd. of Elections is not controlling here.

Defendants also contend that the regulations which implement Title II of the ADA do not require that a public entity make all of its facilities accessible to individuals with disabilities, just that all of its programs be made accessible. Defendants rely on 28 C.F.R. § 35.150 which states, in relevant part:

> (a) General. A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. This paragraph does not--
>
> (1) Necessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities; . . . .

28 C.F.R. § 35.150. Defendants maintain that they have implemented alternative voting procedures which ensure that Philadelphia's program of voting is accessible to individuals with mobility disabilities, thereby satisfying their obligations under the ADA.[2] Defendants point to the fact that the Commonwealth of Pennsylvania allows county boards of elections to designate certain polling places as inaccessible under the following conditions:

> For those county boards of elections that inform the Secretary of the Commonwealth that, despite their good faith efforts to survey all potential polling places in each election district, they have been unable to locate an accessible polling place for every election district in the county or to make the polling places temporarily accessible for Election Day, the Secretary of the Commonwealth has directed the county boards of elections formally to designate as "inaccessible" those polling places that do not satisfy the guidelines issued by the Secretary of the Commonwealth for accessibility.

---

[2] Defendants have submitted two documents, one of which was downloaded and printed from a website maintained by the Commonwealth of Pennsylvania (Defs. Ex. A) and the other from a website maintained by the Philadelphia City Commissioners (Defs. Ex. B), that contain those alternative voting procedures. Defendants maintain that we may consider these documents in connection with their Motion to Dismiss because they constitute public statements of the activities of the Commonwealth of Pennsylvania and of the Philadelphia Board of Election. (Defs.' Mem. at 5 n.3.) We find that these documents are public records which we may consider in the context of Defendants' Motion. See Maule v. Susquehanna Regional Police Comm'n, Civ. A. No. 04-05933, 2007 WL 2844587, at *3 (E.D. Pa. Sept. 27, 2007) (noting that the court may consider public records in deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "including court files, orders, records and letters of official actions or decisions of government agencies and administrative bodies" (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1995))).

(Defs. Ex. A § 3(b).) Additionally, an individual who has been assigned to vote in a polling location that has been designated as inaccessible by the county board of elections may vote by Absentee or Alternative Ballot. (Id. §§ 5, 7-10; Defs. Ex. B.)

Plaintiffs argue that the alternative voting procedures promulgated by the Commonwealth of Pennsylvania and the Philadelphia Board of Elections do not satisfy all of Defendants' obligations under the ADA and RA because the procedures are not an effective means to provide equivalent access to the voting process for voters with disabilities. Plaintiffs argue that these procedures are more burdensome to voters with mobility disabilities because, except in emergency situations, they must apply for absentee or alternative ballots one week prior to the election and must vote prior to the election or travel to Philadelphia City Hall to return their alternative ballots on election day. (See Defs. Exs. A, B.) Plaintiffs also contend that the alternative ballot process is more burdensome and intrusive than the voting process used by non-disabled voters, and cannot satisfy the ADA, because the alternative process requires voters with mobility disabilities to disclose private medical information not required of non-disabled voters in their applications for absentee or alternative ballots. (See Pls. Exs. A, B.)[3] Plaintiffs further contend that requiring voting in advance of election day, or requiring voters to travel to City Hall to submit their alternative ballots, as described above, is not as effective as or equivalent to voting in one's assigned neighborhood polling place. We find that we cannot determine, on the limited record before us on this Motion to Dismiss, whether the alternative voting procedures promulgated by the Commonwealth of Pennsylvania and the Philadelphia Board of Elections effectively provide equivalent access to the voting process for voters

---

[3] Plaintiffs' Exhibits A and B are copies of applications for absentee and alternative ballots. We find that these are public records which we may consider in connection with the instant Motion.

with disabilities and, thus, satisfy Defendants' obligations under the ADA and RA.

Consequently, we find that Plaintiffs' claims that they have been discriminated against based on their mobility disabilities by exclusion from participation in and denial of the benefits of access to polling places and the voting process in a manner that is available to non-disabled voters state cognizable claims for violation of the ADA and the RA. See Westchester Disabled on the Move v. County of Westchester, 346 F. Supp. 2d 473, 478 (S.D.N.Y. 2004) ("Failing to ensure that disabled individuals are able to vote in person and at their assigned polling places--presumably the most commonly used method of voting--could not reasonably be construed as consistent with providing 'meaningful access' to the voting process, particularly where the alternatives relied upon by the Defendants impose additional costs, risks and inconveniences on disabled voters not faced by others.") Defendants' Motion to Dismiss the Complaint is therefore denied as to Defendants' argument that the Complaint must be dismissed because the ADA and RA require only that Plaintiffs be allowed to participate in the program of voting, not that each and every polling place be accessible.[4]

---

[4] Defendants also rely on a technical assistance letter written by the Department of Justice ("DOJ") in 1998. This letter was written to the Arkansas State Board of Election Commissioners in response to queries about the accessibility of polling locations in Arkansas. DOJ, Letter to Judy Steelman (Aug. 3, 1998), http://www.usdoj.gov/crt/foia/ltr216.htm. In response to a query about reassigning disabled voters from inaccessible to accessible polling locations, the letter states: "Your reassignment alternative is permissible under the ADA so long as the reassignment alternative is effective in providing a person with a disability the equal opportunity to cast a ballot on the day of the election. For example, in a State-wide election, having equal numbers of accessible and inaccessible polling sites that are dispersed appropriately throughout the State would meet the requirements of Title II of the ADA, whereas having only a few accessible polling sites would not." Id. Defendants ask us to find, based upon this letter, that Philadelphia's program of voting satisfies the ADA because more than half of the City's polling places are accessible to individuals with mobility disabilities. Although, this letter, by its own terms, provided only "informal guidance to assist [the State Board of Election Commissioners] in understanding the ADA's requirements" and did not "constitute a legal interpretation or legal advice, and [was] not binding on the Department,"

B.	**The VAEH and HAVA**

Defendants next claim that the ADA, RA, VAEH and HAVA all address the same subject matter, the rights of the disabled. They further argue that neither the VAEH nor HAVA require that all polling places be accessible. They contend, accordingly, that the VAEH and HAVA, which are more specific with respect to the voting rights of the disabled, conflict with, and should be given precedence over, the ADA and RA. Defendants maintain that their implementation and use of alternative voting procedures in Philadelphia complies with the VAEH and HAVA and, therefore, this case should be dismissed.

The VAEH specifically allows that a disabled voter, who is assigned to polling place that has been designated as inaccessible in accordance with procedures promulgated by the Commonwealth of Pennsylvania, may be provided with an alternative ballot. The VAEH provides, in relevant part, as follows:

> **(a) Accessibility to all polling places as responsibility of each political subdivision**
>
> Within each State, except as provided in subsection (b) of this section, each political subdivision responsible for conducting elections shall assure that all polling places for Federal elections are accessible to handicapped and elderly voters.

---

id., the views of the DOJ explaining the responsibilities of the states in implementing the ADA are entitled to deference. See Bragdon v. Abbott, 524 U.S. 624, 646 (1998) ("As the agency directed by Congress to issue implementing regulations, see 42 U.S.C. § 12186(b), to render technical assistance explaining the responsibilities of covered individuals and institutions, § 12206(c), and to enforce Title III in court, § 12188(b), the Department's views are entitled to deference." (citing Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984))). However, we find that the letter's statement that reassignment would be appropriate if there were an equal number of accessible and inaccessible polling places dispersed appropriately across the State is not controlling in this case, because this case does not involve the reassignment of disabled voters to accessible polling places. To the contrary, the Commonwealth of Pennsylvania prohibits reassignment of disabled voters to accessible polling places. (Defs. Ex. A § 4(6).)

**(b) Exception**

Subsection (a) of this section shall not apply to a polling place--

(1) in the case of an emergency, as determined by the chief election officer of the State; or

(2) if the chief election officer of the State--

(A) determines that all potential polling places have been surveyed and no such accessible place is available, nor is the political subdivision able to make one temporarily accessible, in the area involved; and

(B) assures that any handicapped or elderly voter assigned to an inaccessible polling place, upon advance request of such voter (pursuant to procedures established by the chief election officer of the State)--

(i) will be assigned to an accessible polling place, or

(ii) will be provided with an alternative means for casting a ballot on the day of the election.

42 U.S.C.A. § 1973ee-1. Defendants contend that Philadelphia's provision of alternate voting procedures to mobility impaired voters satisfies the VAEH and, to the extent the ADA and RA require more, they conflict with the VAEH. "It is a well-established canon of statutory construction that when two statutes cover the same situation [and they conflict], the more specific statute takes precedence over the more general one." Coady v. Vaughn, 251 F.3d 480, 484 (3d Cir. 2001) (citing Edmond v. United States, 520 U.S. 651, 657 (1997); Preiser v. Rodriquez, 411 U.S. 475, 488-89 (1973) and West v. Keve, 721 F.2d 91, 96 (3d Cir.1983)); see also Edmond v. United States, 520 U.S. 651, 657 (1997) ("Ordinarily, where a specific provision conflicts with a general one, the specific governs." (citing Busic v. United States, 446 U.S. 398, 406 (1980))).

The Complaint does not allege any facts which would allow us to infer that either of the

exceptions to the requirement of the VAEH that "each political subdivision responsible for conducting elections shall assure that **all** polling places for Federal elections are accessible to handicapped and elderly voters," 42 U.S.C. § 1973ee-1(a) (emphasis added), exists in connection with all of the more than 400 polling places Plaintiffs contend are inaccessible. (Compl. ¶ 3.) Consequently, we cannot find, in the context of this Motion to Dismiss, that there is any conflict in the instant case between the accessibility requirements of the VAEH and the accessibility requirements of the ADA and RA.

Furthermore, Congress intended the ADA to encompass voting. Am. Ass'n of People with Disabilities v. Hood, 278 F. Supp. 2d 1345, 1356 (M.D. Fla. 2003). Moreover, the ADA contains a provision explaining how it is to be construed with respect to other laws: "[n]othing in this Act shall be construed to invalidate or limit the remedies, rights, and procedures of any Federal law or law of any State or political subdivision of any State or jurisdiction that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this Act." 42 U.S.C. § 12201(b). The application of the ADA to require Defendants to maximize the number of polling places that are accessible to individuals with mobility impairments would not invalidate or limit the remedies provided by the VAEH, instead, "the application of the ADA sought by Plaintiffs would provide broader rights or remedies than provided by . . . the VAEH." Hood, 278 F. Supp. 2d at 1356. We find, accordingly, that there is no conflict between the ADA and the VAEH with respect to polling place accessibility in the context of this case.

Defendants further argue that § 301(a)(3)(A) of HAVA conflicts with, and takes precedence over the ADA and RA, because it requires only that voting equipment be accessible and does not require that polling places be accessible. Section 301(a)(3)(A) of HAVA requires that voting

13

systems used in federal elections "be accessible for individuals with disabilities, including nonvisual accessibility for the blind and visually impaired, in a manner that provides the same opportunity for access and participation (including privacy and independence) as for other voters . . . ." 42 U.S.C. § 15481(a)(3)(A). The DOJ has addressed whether HAVA requires that polling places be accessible in a non-binding technical assistance letter. In March 2005, in response to a letter from the Mississippi Assistant Secretary of State for Elections, the DOJ considered whether the temporary reassignment of disabled voters to accessible polling places in Mississippi, while all of Mississippi's polling places were made accessible, complied with HAVA. DOJ, Letter to John W. Eads (Mar. 4, 2005), http://www.usdoj.gov/crt/voting/hava/ms-disability.htm. In the letter, the DOJ noted that HAVA requires that polling places, as well as voting machines, be accessible because:

> logically, persons with disabilities must be able to gain access to the polling place in order to be able to use the accessible voting system. Having an accessible voting system does little good if voters cannot enter the polling place to use it. Hence, not only must the voting system be accessible to persons with disabilities but also the polling place where the voting system is located.

Id. As we must give deference to the view of the DOJ, Bragdon v. Abbott, 524 U.S. 624, 646 (1998), we find that there is no conflict between the accessibility requirements of HAVA and of the ADA and RA with respect to polling place accessibility in this case. Defendants' Motion to Dismiss the Complaint is therefore denied as to their argument that the Complaint must be dismissed because the VAEH and HAVA conflict with and take precedence over the requirements of the ADA and RA as to the accessibility of polling locations.

### C. The Previous Settlement Agreement

Defendants also argue that this action is barred by the January 9, 2007 Settlement Agreement

in Tartaglione. "Basic contract principles apply to the review of settlement agreements." Flemming v. Air Sunshine, 311 F.3d 282, 289 (3d Cir. 2002) (citing In re Cendant Corp. Prides Litig., 233 F.3d 188, 193 (3d Cir. 2000)). "Pennsylvania contract law begins with the 'firmly settled' point that 'the intent of the parties to a written contract is contained in the writing itself.'" Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 93 (3d Cir. 2001) (quoting Krizovensky v. Krizovensky, 624 A.2d 638, 642 (Pa. Super. Ct. 1993)). Where the language of the contract is "clear and unequivocal," its meaning "'must be determined by its contents alone.'" Id. (quoting Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982)).

Plaintiffs in Tartaglione claimed that the "Commissioners of the City of Philadelphia in charge of elections and the purchase of voting machines" violated their civil rights under the ADA and the RA, "by denying them equal and integrated access to polling places and accessible voting machines." Tartaglione, Civ. A. No. 01-1923, 2001 U.S. Dist. LEXIS 16731, at *1-*2 (E.D. Pa. Oct. 11, 2001). On October 22, 2001, we certified the following subclasses in that case: "(1) all mobility impaired individuals, including those that use a wheelchair to ambulate, and who are registered to vote in the City of Philadelphia; and (2) all blind or visually impaired individuals who are registered to vote in the City of Philadelphia." Tartaglione, Civ. A. No. 01-1923, 2001 U.S. Dist. LEXIS 16932, at *15 (E.D. Pa. Oct. 22, 2001). The parties to that case settled their claims by entering into a Settlement Agreement which was approved on November 21, 2003. Order, Tartaglione, Civ. A. No. 01-1923 (E.D. Pa. Nov. 21, 2003). Although we approved the parties' Settlement Agreement, we denied their request that we certify a settlement class that would have expanded the subclasses to include all mobility and visually impaired individuals "who are registered to vote or who are eligible or will become eligible to be registered to vote in the City of Philadelphia

15

. . . ." See id. ¶ 4; Plaintiff's Mem. of Law in Support of Mot. for Certification of the Settlement Class at 6, Tartaglione, Civ. A. No. 01-1923 (E.D. Pa. Nov. 3, 2003). Consequently, the subclass of plaintiffs with mobility disabilities in Tartaglione was limited to individuals with mobility disabilities who had registered to vote in the City of Philadelphia by October 22, 2001.

The January 9, 2007 Settlement Agreement resolved the Tartaglione plaintiffs' First Motion for Attorneys' Fees, which was filed on October 19, 2006. In consideration for the defendants' agreement to pay their attorneys' fees, the plaintiffs in that case agreed as follows:

> that they will not seek to enforce or otherwise bring any further motions, applications or other action whatsoever relating to the November 4, 2003, settlement agreement or underlying Litigation; provided, however, that nothing in this Agreement shall restrict the right of plaintiffs to bring a new action relating to any future election.

Settlement Agreement ¶4, Tartaglione, Civ. A. No. 01-1923 (E.D. Pa. Jan. 7, 2007). Defendants contend that this provision of the January 7, 2007 Settlement Agreement thereby barred Plaintiffs from bringing the instant litigation because no election took place between January 7, 2007 and the filing of the instant lawsuit on February 21, 2007 and because the instant Complaint does not allege any other change in conditions since January 7, 2007.

Although Defendants are correct that the January 7, 2007 Settlement Agreement in Tartaglione barred the plaintiffs and members of the two certified subclasses from filing additional lawsuits relating to the claims asserted in that case, the named Plaintiffs in the instant lawsuit, and the class they seek to represent, were not plaintiffs or members of either subclass in that case. None of the Plaintiffs in this action were both mobility impaired and registered to vote in the City of Philadelphia on October 22, 2001. Consequently, they were not members of the mobility impaired subclass in Tartaglione and they are not bound by the January 7, 2007 Settlement Agreement in that

case. See Richards v. Jefferson County, 517 U.S. 793, 798 (1996) ("'[A] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.'" (quoting Martin v. Wilks, 490 U.S. 755, 761-762 (1989))).[5] Defendants' Motion to Dismiss the Complaint is therefore denied as to their argument that this action is barred by the January 9, 2007 Settlement Agreement in Tartaglione.[6]

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is denied. An appropriate order follows.

---

[5]There is, of course, an exception to the rule that a judgment in one lawsuit does not bind a nonparty to the lawsuit: "when it can be said that there is 'privity' between a party to the second case and a party who is bound by an earlier judgment." Richards, 517 U.S. at 798. As the record before us on this Motion to Dismiss is limited to the allegations of the Complaint, there is no basis on which we can determine, in the context of this Motion, whether the exception applies.

[6]Although we have determined, based upon the record before us on this Motion to Dismiss, that the Plaintiffs in this action are not bound by the January 9, 2007 Settlement Agreement in Tartaglione, we also recognize that performance by the Defendants of their obligations under the original Settlement Agreement in that case would render moot the claims alleged in the instant Complaint. We further note that both Plaintiffs and the taxpayers of the City of Philadelphia would benefit from the most cost effective resolution of the issues asserted in this case.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN KERRIGAN, ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE PHILADELPHIA BOARD | : | |
| OF ELECTION, ET AL. | : | NO. 07-687 |

**O R D E R**

**AND NOW,** this 29th day of January, 2008, upon consideration of Defendants' Motion to Dismiss (Docket No. 6) and all documents filed in connection therewith, **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.