IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KATHLEEN KERRIGAN, ET AL.     :      CIVIL ACTION
                          :
           v.               :
                          :
THE PHILADELPHIA BOARD    :
OF ELECTION, ET AL.            :      NO. 07-687

## MEMORANDUM AND ORDER

**Padova, J.**                                                        **March 13, 2008**

       Plaintiffs, individuals with mobility disabilities who are registered to vote in the City of Philadelphia, have brought this action against the Philadelphia Board of Elections and the Commissioners of the City of Philadelphia in charge of elections, alleging that Defendants have violated their civil rights under Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12131-12134, and § 504 of the Rehabilitation Act of 1973 (the "RA"), 29 U.S.C. § 794(a), by denying them equal and integrated access to neighborhood polling places in Philadelphia.  The Complaint alleges that more than 400 of Philadelphia's 1600 polling locations are not accessible to persons with mobility impairments who cannot readily walk up and down steps and that Defendants have failed to select and provide accessible polling places.  (Id. ¶¶ 3-4.)  Plaintiffs seek declaratory and injunctive relief requiring Defendants to make all polling places accessible to voters with mobility disabilities.  (Id.)  Three of the Plaintiffs, Kathleen Kerrigan, Tariq Mangum, and Michael McShea, seek to represent a class of similarly situated Philadelphia County voters with mobility disabilities who either developed a mobility disability or became eligible to vote after October 22, 2001.[1]

---

[1]The Complaint was brought by six Plaintiffs.  One of those Plaintiffs, Renee Crosby, was voluntarily dismissed as a Plaintiff on January 30, 2008.  (1/30/08 Notice of Voluntary Dismissal.) Plaintiffs have indicated their agreement with Defendants that Plaintiff Carolyn Davenport is not a

## I.    LEGAL STANDARD

To obtain class certification, Plaintiffs must meet all four requirements of Federal Rule of Civil Procedure 23(a) and at least one part of Federal Rule of Civil Procedure 23(b).  Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994) (citing Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239 (3d Cir. 1975)).  "[I]n determining whether a class will be certified, the substantive allegations of the complaint must be taken as true."  Chiang v. Veneman, 385 F.3d 256, 262 (3d Cir. 2004) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974)).  We are not, however, limited to the pleadings.  See Newton v. Merrill Lynch, Pierce Fenner & Smith, Inc., 259 F.3d 154, 168-69 (3d Cir. 2001) ("In reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action.").  Nonetheless, "it is not necessary for the plaintiffs to establish the merits of their case at the class certification stage."  Chiang, 385 F.3d at 262.  Moreover, when doubt exists concerning certification of the class, the court should err in favor of allowing the case to proceed as a class action.  Behrend v. Comcast Corp., Civ. A. No. 03-6604, 2007 U.S. Dist. LEXIS 75186, at *6-*7 (E.D. Pa. Oct. 10, 2007) (citing Eisenberg v. Gagnon, 766 F.2d 770, 785 (3d Cir. 1985)).

The four requirements of Rule 23(a) are satisfied only if:

> 1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Plaintiffs allege that the proposed class is maintainable pursuant to Federal

member of the proposed class and that Plaintiff Anthony Holiday should not serve as a class representative in this case.  (Pls. Reply Mem. at 2.)

Rule of Civil Procedure 23(b)(2) which requires that: "the party opposing the class has acted or

refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P.

23(b)(2). Defendants argue that class certification should be denied because Plaintiffs do not satisfy

the third and fourth requirements of Rule 23(a) relating to the adequacy of the class representatives

and the typicality of their claims.

## II.   DISCUSSION

### A.   Rule 23(a)

#### 1.   Numerosity

Plaintiffs contend that the class they seek to represent comprises approximately 2,970

Philadelphia County voters who became eligible to vote, or developed mobility disabilities, since

October 22, 2001.  (Pls. Mem. at 8-9.)[2]  There is no minimum number necessary to satisfy the

---

[2]The beginning date for the class is important because, on October 22, 2001, we certified the following subclasses in Nat'l Org. on Disability v. Tartaglione, Civ. A. No. 01-1923 (E.D. Pa.) ("Tartaglione"):  "(1) all mobility impaired individuals, including those that use a wheelchair to ambulate, and who are registered to vote in the City of Philadelphia; and (2) all blind or visually impaired individuals who are registered to vote in the City of Philadelphia." Tartaglione, Civ. A. No. 01-1923, 2001 U.S. Dist. LEXIS 16932, at *15 (E.D. Pa. Oct. 22, 2001).  The Tartaglione plaintiffs, like the Plaintiffs in this case, claimed that the "Commissioners of the City of Philadelphia in charge of elections . . ." violated their civil rights under the ADA and the RA, "by denying them equal and integrated access to polling places and accessible voting machines." Tartaglione, Civ. A. No. 01-1923, 2001 U.S. Dist. LEXIS 16731, at *2 (E.D. Pa. Oct. 11, 2001).  The Tartaglione parties settled their claims by entering into a Settlement Agreement which was approved on November 21, 2003.  Tartaglione, Civ. A. No. 01-1923 (E.D. Pa. Nov. 21, 2003) (Order approving Settlement Agreement).  On January 9, 2007, the Tartaglione parties entered into a  Settlement Agreement resolving the Tartaglione plaintiffs' First Motion for Attorneys' Fees, which was filed on October 19, 2006.  In consideration for the defendants' agreement to pay their attorneys' fees, the plaintiffs in that case agreed as follows:

> that they will not seek to enforce or otherwise bring any further
> motions, applications or other action whatsoever relating to the
> November 4, 2003, settlement agreement or underlying Litigation;

numerosity requirement.  See Moskokwitz v. Lopp, 128 F.R.D. 624, 628 (E.D. Pa. 1989).  The

statute does not require "any particular number or require that joinder of all members be impossible,

so long as a good faith estimate of the number of class members is provided." Stewart v.  Associates

Consumer Discount Co., 183 F.R.D. 189, 194 (E.D. Pa. 1998).  The Court may use common sense

assumptions to support a finding of numerosity.  Id.  Common sense dictates that where the class

numbers in the thousands that "joinder of all would be impracticable and that the numerosity

requirement has been satisfied."  Id.  We find that Plaintiffs have provided a good faith estimate of

the size of the class, which at nearly 3,000 individuals makes joinder impracticable and,

consequently, that the numerosity requirement is met in this case.

> 2.    Commonality and typicality

"Commonality does not require an identity of claims or facts among class members; instead,

'the commonality requirement will be satisfied if the named plaintiffs share at least one question of

fact or law with the grievances of the prospective class.'" Johnston v. HBO Film Mgmt., 265 F.3d

178, 184 (3d Cir. 2001) (quoting In re the Prudential Ins. Co. of Am. Sales Practice Litig., 148 F.3d

283, 310 (3d Cir. 1998) and Baby Neal, 43 F.3d at 56).  "Rule 23(b)(2) classes seeking injunctive

relief 'by their very nature often present common questions satisfying Rule 23(a)(2).'"  Duffy v.

Massinari, 202 F.R.D. 437, 442 (E.D. Pa. June 15, 2001) (quoting Baby Neal, 43 F.3d at 56); see

---

provided, however, that nothing in this Agreement shall restrict the
right of plaintiffs to bring a new action relating to any future election.

Tartaglione, Civ. A. No. 01-1923 (E.D. Pa. Jan. 7, 2007) (Settlement Agreement ¶ 4).  Consequently,
individuals who were members in the mobility disability subclass in Tartaglione would be unable
to participate as members of the class in this case.  The class in this case has, accordingly, been
limited to individuals who either became eligible to vote in Philadelphia after October 22, 2001 or
developed mobility disabilities after October 22, 2001 and could not have been members of the
mobility disability subclass in Tartaglione.

<u>also</u> <u>Dittimus-Bey v. Taylor</u>, 244 F.R.D. 284, 290 (D.N.J. 2007) (same).

To satisfy the typicality requirement, "the claims of the class representatives must be typical of the class as a whole." <u>Johnston</u>, 265 F.3d at 184. Typicality "entails an inquiry [into] whether 'the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" <u>Eisenberg</u>, 766 F.2d at 786 (quoting <u>Weiss v. York Hosp.</u>, 745 F.2d 786, 805 n.36 (3d Cir. 1984)). Even if there are pronounced factual differences among the plaintiffs, typicality is satisfied as long as there is a strong similarity of legal theories and the named plaintiffs do not have unique circumstances. <u>See</u> <u>Johnston</u>, 265 F.3d at 184 ("Indeed, so long as the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences.") (quotation omitted); <u>Baby Neal</u>, 43 F.3d at 58 ("Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice."); <u>Hoxworth v. Blinder, Robinson & Co. Inc.</u>, 980 F.2d 912, 923 (3d Cir. 1992) ("'[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.'" (quoting <u>Grasty v. Amalgamated Clothing & Textile Workers Union</u>, 828 F.2d 123 (3d Cir. 1987))). Typical does not mean identical, and if necessary a court may sever claims or use subclasses to treat individual issues separately. <u>Eisenberg</u>, 766 F.2d at 786.

Plaintiffs maintain that the commonality requirement is satisfied in this case because they have the following questions of law or fact in common with the members of the proposed class: whether the remaining inaccessible Philadelphia polling places can be made accessible or moved to

accessible locations; whether Defendants allow others to veto decisions to relocate inaccessible polling places; whether Defendants violate the ADA and RA by excluding Plaintiffs and class members from the voting process and failing to afford them equal opportunity to participate in the polling process; whether Defendants violate the ADA and RA by using methods of administration that have the effect of discriminating against Plaintiffs and class members; whether Defendants violate the ADA and RA by selecting sites for polling places that exclude Plaintiffs and class members from the voting process; whether Defendants violate the ADA and RA by failing to make reasonable modifications to their polices, practices and procedures to avoid discriminating against Plaintiffs and class members; whether Defendants violate the ADA and RA by failing to make their services available to Plaintiffs and class members in the most integrated setting appropriate to their needs; and whether Defendants violate the ADA's and RA's program accessibility mandates. (Pls. Mem. at 11.) Additionally, Plaintiffs maintain that the typicality requirement is satisfied in this case because their claims, and those of the class, arise from the same policies and procedures and are based on the same legal theory.

Defendants contend that Plaintiffs cannot establish commonality or typicality in this case because an individualized inquiry would be required to determine whether each member of the class is mobility disabled within the meaning of the ADA and RA. (Def. Mem. at 7-9.) We do not agree that such individualized determinations would have to be made with respect to each member of the proposed class, because Plaintiffs seek only injunctive relief applicable to the class as a whole. See Bacal, 1995 U.S. Dist. LEXIS 6609, at *11 ("Class relief is especially appropriate 'where plaintiffs request declaratory and injunctive relief against a defendant engaging in a common course of conduct toward them, and there is therefore no need for individualized determinations of the propriety of

injective relief.'" (quoting <u>Baby Neal</u>, 43 F.3d at 57)).  Moreover, "'[t]he need for individualized determinations . . . has not totally precluded courts from certifying class actions based on claims of disability discrimination.  Where the challenged conduct is a specific policy that allegedly discriminates in a broad-based manner against class members, class certification may be appropriate.'"  <u>Hohider v. UPS</u>, 243 F.R.D. 147, 204 (W.D. Pa. 2007) (emphasis omitted) (quoting 5 Jonathan R. Mook, Labor and Employment Law § 142.02[7](c) (2007)).  We will not deny the Motion for Class Certification on this basis.

Defendants also contend that Plaintiffs cannot establish commonality or typicality in this case because some class members may be assigned to accessible polling places.  Defendants maintain that these class members, unlike those who are assigned to inaccessible polling places, would have no interest in the injunctive relief sought by Plaintiffs.  We previously rejected this argument when it was raised by these same Defendants in <u>Nat'l Org. on Disability v. Tartaglione</u>, Civ. A. No. 01-1923 (E.D. Pa.) ("<u>Tartaglione</u>"), and found that this potential difference between class members was too slight to warrant a finding that the typicality requirement was not met in that case.  <u>Tartaglione</u>, Civ. A. No. 01-1923, 2001 U.S. Dist. LEXIS 16932, at *11 (E.D. Pa. Oct. 22, 2001).  Defendants have not persuaded us otherwise in this case.

Defendants further argue that the commonality and typicality requirements cannot be satisfied in this case because a conflict exists between class members who use wheelchairs to ambulate and elderly class members who are able to ambulate without wheelchairs.  Defendants assert that wheelchair users would be willing to travel greater distances to vote in accessible polling places than elderly class members and that elderly class members will not vote in a polling place that is moved six or seven blocks away or across a busy street.  (Defs. Supplemental Mem. at 6-9, 11.)  Defendants

rest their proposition that wheelchair users are willing to travel to vote in accessible polling places on the deposition testimony of Plaintiffs Mangum and McShea. Contrary to Defendants' argument, however, Mr. Mangum did not testify to a willingness to travel more than an extra block or two to vote in an accessible polling place. Rather, he testified that his willingness to vote in a polling place even two blocks farther from his home than his current polling place "depends on the area and the comfort -- like if I'm comfortable with that block or anything." (Mangum Dep. at 47.) He also testified that he would not support moving his polling place to an accessible location if that meant that other voters could not get to the new location: "I wouldn't like that because you need everybody's vote in any situation." (Id. at 48.) He further testified that he would be unhappy with the idea of moving his polling place and would prefer that it be made accessible. (Id. at 50.) Mr. McShea testified that he would be willing to travel to a more accessible polling place. However, he would only be willing to do so "as long as it wasn't too far." (McShea Dep. at 33.)

Defendants contend that elderly class members "are reluctant to travel far from their homes and often cannot walk long distances." (Defs. Supplemental Mem. at 8.) Defendants maintain that these class members would not be willing to walk a few additional blocks to vote in an accessible polling place. They rely on comments made by ward leaders who appeared at meetings of the City Commissioners and spoke in opposition to relocating certain polling places to accessible locations. Sharon Losier voiced opposition to moving a polling place seven blocks from 500 Whitby Avenue to 53rd and Baltimore Avenue because "at least 100 seniors . . . vote at that polling place" and the most disabled voter, a woman who uses two canes, is able to use the current polling place, which has two steps. (Defs. Ex. G at 16-17.) Timothy Martin spoke out in opposition to a proposal to move a polling place from 1225 South 58th Street to 58th and Willows Avenue, six blocks away, outside

of the division.  (Defs. Ex. I at 29-30.)  Mr. Martin stated that the ward had a number of elderly

voters and no handicapped voters who had difficulty voting at the current location.  (<u>Id.</u> at 30.)  Rose

Ampachello, ward leader of 39A, spoke out against a proposal to move a polling place from 2601

South Eleventh Street to either Ninth and Oregon Avenue or Ninth and Johnson.  (Defs. Ex. J. at 48.)

Ms. Ampachello stated that voters told her that they would not vote in the new polling place "mainly

because for some it's a four or five block walk plus crossing Oregon Avenue." (<u>Id.</u>)  She also stated

that the present polling place had one step that had been previously ramped and that it could be

ramped again.  (<u>Id.</u> at 48-49.)  Benjamin Morris opposed moving a polling place from 23rd and

Cambria to 22nd and Huntingdon Street because that ward has many senior citizens and the move

would require them to cross a busy street.  (<u>Id.</u> at 27-28.) Bill Greenly also voiced opposition to

moving a polling place from 867 North Corinthian Street to either of two proposed locations because

the proposed locations, which were outside of the division, would be a longer walk for a number of

residents, particularly seniors.  (<u>Id.</u> at 33-35.)

        We find that older class members may be reluctant to vote in accessible polling places if

those polling places are more than a few blocks farther from their homes than their current polling

places.  However, we do not find that the interests of Plaintiffs Mangum and McShea conflict with

the interests of older class members with respect to the relocation of polling places, as neither

Plaintiff Mangum nor Plaintiff McShea favors moving polling places long distances.  We also note

that Plaintiffs seek the relocation of inaccessible polling places only if those polling places cannot

be made accessible.  "Conflicts of interest are rare in Rule 23(b)(2) class actions seeking only

declaratory and injunctive relief."  <u>New Directions Treatment Servs. v. City of Reading</u>, 490 F.3d

293, 313 (3d Cir. 2007) (citing Fed. R. Civ. P. 23(b)(2)) (footnote omitted). We find that Defendants

have not established that a true conflict exists in this case.  We also find, on the record before us, that the potential conflict raised by Defendants does not warrant a finding that the proposed class does not satisfy the commonality or typicality requirements.

We find that the alleged discriminatory acts of Defendants are the same with respect to the named Plaintiffs and the class they seek to represent.  As Plaintiffs seek injunctive relief against Defendants, who are allegedly engaged in a common course of conduct on a class-wide basis, we find that the commonality requirement is met in this case.  See T.B. v. School Dist. of Philadelphia, Civ. A. No. 97-5453, 1997 U.S. Dist. LEXIS 19300, at *11, (E.D. Pa., Dec. 1, 1997) ("Class relief is 'especially appropriate' where plaintiffs seek injunctive relief against defendants engaged in a common course of conduct affecting the entire class.") (citing Bacal v. SEPTA,, Civ. A. No. 94-6497, 1995 U.S. Dist. LEXIS 6609, at *11 (E.D. Pa. May 16, 1995)).  We also find that the claims of Plaintiff Mangum and McShea are typical of the class as a whole and that the typicality requirement is met in this case.  However, we retain the authority to decertify the class or to create subclasses to accommodate conflicting interests if, after the record is fully developed, it appears that there are inherent conflicts within the class.

### 3.    Adequacy of representation

"To establish adequate representation, (a) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." Tartaglione, 2001 U.S. Dist. LEXIS 16932, at *11 (citing  T.B. v. School Dist. of Philadelphia, 1997 U.S. Dist. LEXIS 19300, at *15).  Defendants have the burden of establishing that the representative plaintiffs will not adequately represent the class.  See Harper v. Trans Union, L.L.C., Civ. A. No. 04-3510, 2006 U.S. Dist. LEXIS 91813, at

*17 (citing <u>Shamberg v. Ahlstrom</u>, 111 F.R.D. 689, 693 (D.N.J. 1986)).   We must therefore determine "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class."   <u>Johnston</u>, 265 F.3d at 185 (citations omitted).

Plaintiffs maintain that they share the same injuries and seek the same declaratory and injunctive relief as the class members they seek to represent and, therefore, their interests do not conflict with those of other class members.   They also maintain that their counsel, Robert W. Meek and Stephen F. Gold, have thirty years and thirty-five years of experience, respectively, as civil rights attorneys with expertise in disabilities law and class litigation and have litigated numerous cases to enforce the ADA and RA; and that Seth Kreimer has been a professor at the University of Pennsylvania School of Law for more than 25 years and has experience as counsel in a variety of complex civil rights actions.   We find that Plaintiffs' counsel are qualified, experienced and generally able to conduct this litigation on behalf of the class.

Defendants argue that Plaintiff Kerrigan is precluded from participating in this lawsuit and, accordingly, cannot adequately represent the interests of the proposed class.   We agree.   Plaintiff Kerrigan was registered to vote and developed a mobility disability prior to October 22, 2001. She registered to vote on April 11, 1994.   (Def. Ex. A.)   She started using a walker and cane about 10 years ago and had to get a handicapped parking spot because she could not walk more than a block. (Kerrigan Dep. at 10.)   When she went shopping, she could walk to and from her car, but "once inside a store, [she] usually rode those power chair things.   If they didn't have them, [she] didn't go." (<u>Id.</u> at 11.)   Plaintiff Kerrigan obtained her wheelchair about eight years ago but did not use it continually at that time.   (<u>Id.</u>)   Between the time she obtained her wheelchair eight years ago and approximately three years ago, she used her wheelchair, walker and cane, depending on the

circumstances.  (<u>Id.</u> at 11-12.)  The RA and ADA define "disability" as "a physical or mental impairment which substantially limits one or more . . .  major life activities . . . ."  29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(2).  We find that Plaintiff Kerrigan had a mobility disability for purposes of the RA and ADA at least eight years ago, prior to October 22, 2001.  Thus she had both registered to vote and developed a mobility disability prior to October 22, 2001.  We find, accordingly, that she is not a member of the proposed class and would not be an adequate class representative.

Defendants also argue that Plaintiffs Mangum and McShea would not be adequate class representatives because, as wheelchair users, their interests conflict with the interests of elderly class members who do not use wheelchairs because wheelchair users are willing to travel longer distances to vote in accessible polling places than class members who do not use wheelchairs.  As discussed above, we do not find that the interests of Plaintiffs Mangum and McShea, who use wheelchairs, conflict with the interests of older class members with respect to the relocation of polling places, as neither Plaintiff Mangum nor Plaintiff McShea favors moving polling places long distances.  We conclude that Plaintiffs Mangum and McShea are adequate class representatives.  We find, accordingly, that the adequacy of representation requirement is met in this case.

B.    <u>Rule 23(b)(2)</u>

As Plaintiffs have met the requirements for certification of the proposed class pursuant to Rule 23(a), we must examine whether certification is appropriate under at least one part of Rule 23(b).  Plaintiffs seek to have this class certified pursuant to Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ."  Fed. R. Civ. P.

23(b)(2).  Rule 23(b)(2) "was designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons." <u>Baby Neal</u>, 43 F.3d at 59 (internal quotation omitted); <u>see also</u> <u>Stewart</u>, 275 F.3d at 228 (same).  The Complaint seeks class-wide injunctive relief to remedy Defendants' alleged discrimination against mobility disabled voters. We find, therefore, that certification of the proposed class pursuant to Rule 23(b)(2) is appropriate.

## III.   CONCLUSION

For the reasons stated above, we conclude that Plaintiffs have met the requirements for certification of the class pursuant to Federal Rule of Civil Procedure 23.  Accordingly, we certify the proposed class for the purpose of seeking injunctive relief pursuant to Rule 23(b)(2).  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN KERRIGAN, ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE PHILADELPHIA BOARD | : | |
| OF ELECTION, ET AL. | : | NO. 07-687 |

**O R D E R**

_____**AND NOW,** this 13th day of March, 2008, upon consideration of Plaintiffs' Motion for Class

Certification (Docket No. 8), and all documents filed in connection therewith, **IT IS HEREBY**

**ORDERED** that said Motion is **GRANTED** as follows:

1.     This case shall proceed on behalf of the following class: All eligible Philadelphia

County voters with mobility disabilities who either became eligible to vote or

developed a mobility disability after October 22, 2001.

2.     The class shall be represented by Plaintiffs Tariq Mangum and Michael J. McShea.

3.     Pursuant to Fed. R. Civ. P. 23(g), Robert W. Meek, Esq., Stephen F. Gold, Esq., and

Seth Kreimer, Esq. are **APPOINTED** Co-Lead Counsel for the class.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.