IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

—————————————————————
                                                    :
KATHLEEN KERRIGAN, ANTHONY          :
HOLIDAY, MICHAEL J. McSHEA,             :
TARIQ MANGUM, RENEE CROSBY, and    :
CAROLYN DAVENPORT, on behalf of        :
themselves and all others similarly situated,   :
                                                    :
                        Plaintiffs,              :
                                                    :          Civil Action No. 07-CV-687
            v.                                       :
                                                    :          Class Action
THE CITY OF PHILADELPHIA; MARGARET  :
TARTAGLIONE, ANTHONY CLARK and      :
JOSEPH J. DUDA, in their official capacities as  :
Philadelphia City Commissioners;              :
PENNSYLVANIA DEPARTMENT OF STATE  :
and PEDRO A. CORTÉS, in his official capacity  :
as Secretary of the Commonwealth,             :
                                                    :
                        Defendants.            :
—————————————————————:

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT AGREEMENT AND FOR APPROVAL OF CLASS NOTICE

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs in the above-captioned class

action litigation, through their counsel, submit this Motion seeking preliminary approval of the

proposed class action Settlement Agreement and seeking approval of the proposed class notice.

In support of this Motion, Plaintiffs submit a Local Rule 7.1(b) Certification (Attachment 1) and

state as follows:

1.        Plaintiffs, individuals with mobility disabilities, filed this lawsuit in February 2007

against the Philadelphia Board of Elections and the City Commissioners (collectively, the City

Defendants) to challenge the inaccessibility of polling places in Philadelphia.  Plaintiffs alleged

that the City Defendants violated Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134, and Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794, by, *inter alia*, failing to maximize the number of accessible polling places and, thus, denying voters with mobility disabilities equal access to Philadelphia's voting program. Plaintiffs sought declaratory and injunctive relief. The City Defendants denied all allegations after the Court rejected their Motion to Dismiss in January 2008.

2.      At the urging of the Court in the spring of 2007, Plaintiffs and the City Defendants worked with Magistrate Judge Timothy R. Rice in an effort to negotiate a settlement, but the parties did not reach a settlement at that time.

3.      Plaintiffs filed a Motion for Permanent Injunction in January 2008. The Court subsequently authorized the parties to engage in discovery. Plaintiffs reviewed nearly 30,000 pages of documents produced by the City Defendants. Both the Plaintiffs and the City Defendants propounded and responded to written discovery requests. The City Defendants took over 25 depositions and Plaintiffs deposed a Rule 30(b)(6) witness designated by the City Defendants. Plaintiffs also hired an expert witness who prepared a report in support of their Motion for Permanent Injunction and who the City Defendants deposed. In addition, the Plaintiffs in the November 2007 and April 2008 elections surveyed over 250 polling places that the City Defendants had designated as accessible.

4.      Over objections by the City Defendants, the Court on March 13, 2008 certified this case to proceed as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) on behalf of "all eligible Philadelphia County voters with mobility disabilities who either became eligible to vote or developed a mobility disability after October 22, 2001."

5.      Prior to the scheduled June 2008 hearing on Plaintiffs' Motion for Permanent Injunction, the City Defendants filed a Motion for Summary Judgment.

6.      By Order dated August 14, 2008, the Court denied in part and granted in part the City Defendants' Motion for Summary Judgment.  The Court rejected all of the Defendants' substantive challenges to the Plaintiffs' ADA and RA claims against the City Defendants.  The Court, however, agreed with the City Defendants that the Commonwealth of Pennsylvania is an indispensable party and ordered the Plaintiffs to join the Pennsylvania Department of State as a defendant in the litigation.[1]  The Court subsequently denied the City Defendants' Motion for Clarification, Reconsideration, or, in the Alternative, Certification for Interlocutory Appeal.

7.      On August 18, 2008, the Plaintiffs filed their Amended Complaint in accordance with the Court's summary judgment ruling.  In addition to stating ADA and RA claims against the City Defendants, the Amended Complaint asserts claims under the Voting Accessibility for the Elderly and Handicapped Act (VAEH), the ADA, and the RA against the Pennsylvania Department of State and the Secretary of the Commonwealth (collectively, the Commonwealth Defendants).  The Commonwealth Defendants filed a Motion to Dismiss in September 2008, which is pending.

8.      After the Court issued its summary judgment decision, the parties restarted settlement negotiations under the guidance of Magistrate Judge Rice.  The United States Department of Justice (DOJ), which had been investigating issues relating to the accessibility of Philadelphia's polling places, also participated in the negotiations.

_____

[1]  The Court also required the Plaintiffs to substitute the City of Philadelphia for the Philadelphia Board of Elections.

3

9.      These negotiations ultimately resulted in a Settlement Agreement (Agreement), a copy of which is submitted as Attachment 2.  The key provisions are summarized below.

    a.      ***Surveys of Polling Places*** -- Using a comprehensive survey instrument developed by DOJ, all Philadelphia polling places will be surveyed by independent entities to assess their accessibility to voters with mobility disabilities.  Agreement ¶¶ II.A-II.E.

        (1)      The surveys will begin immediately after DOJ enters into its separate settlement agreement with the City Defendants.  Agreement ¶ II.D.[2]

        (2)      DOJ and an independent, qualified professional selected by Magistrate Judge Rice (the Private Third Party), using an agreed-upon Survey Instrument, each will survey fifty percent of polling places designated by the City Defendants as accessible (*i.e.*, all polling places other than those designated by the City Defendants as "NN" or "NL").  *Id.* ¶¶ I.A, II.B & Exh. A.  DOJ also will survey the polling places designated by the City Defendants as inaccessible ("NN" or "NL").  *Id.* ¶ II.B.

        (3)      The Private Third Party will review no fewer than 120 polling places every two months (Survey Period), excluding the period for three weeks before and three weeks after the election when no surveys will be conducted (Survey Blackout Period).  *Id.* ¶¶ II.D.1-2.  DOJ will conduct as many surveys as practicable with the goal of conducting no fewer than 120 polling places surveys in each Survey Period (excluding the Survey Blackout Period).  *Id.* ¶¶ II.D.1, II.D.3.

---

[2]  Under the Agreement between Plaintiffs and Defendants, DOJ must enter into a separate settlement with the City Defendants (a copy of which is attached as Exhibit F to the Agreement) 90 days from the parties' execution of the Agreement.  Agreement at 1 and ¶ VII.D.  If DOJ's agreement with the City Defendants is not finalized by that date, the Plaintiffs' Agreement with Defendants will be null and void and this litigation will be reinstated.  *Id.*

(4)     On the dates of the primary and general elections in 2009, DOJ and the Private Third Party will evaluate further those polling places that they had found to be inaccessible in their prior surveys, but that the City Defendants have designated as accessible on election day.  *Id.* ¶ II.E.[3]

(5)     Within 30 days of the end of each Survey Period, the Private Third Party and DOJ will issue a written report that contains the results of each survey, including for each polling place surveyed and determined to be inaccessible:

(i)     whether temporary modifications (*e.g.*, portable ramps, threshold ramps, or re-designation of "alternate" entrances as the exclusive entrances) can be used to make the polling places accessible;

(ii)     for publicly-owned polling places, whether permanent modifications can be made to make the buildings accessible;

(iii)     for inaccessible polling places that cannot be modified temporarily, whether the polling places can reasonably be relocated to sites that are accessible (or could be made accessible with temporary modifications) applying certain agreed-upon criteria to determine the reasonableness of the relocation;[4]

_____

[3] For example, the City Defendants designate one-step buildings as accessible since the City Defendants are to provide them with portable ramps for use on election day.  A survey prior to election day can evaluate the accessibility of the interior of the space, but the accessibility of the exterior can be evaluated only on election day when the surveyor can see whether the portable ramp has been delivered and is in place for use by voters.

[4] The criteria used to assess reasonableness of potential relocation sites include: (1) that the proposed site is within the polling division or an adjacent division; (2) that the proposed site is no more than 5 City blocks from the furthest edge of the division; (3) that there are no significant dangers that would preclude safe travel by pedestrians; (4) that the proposed site is large enough to accommodate the polling place; and (5) that the proposed site has the physical and mechanical means

(iv)     whether a temporary sign should be posted on election day to an alternate accessible entrance.  *Id.* ¶ II.G.

(6)     The Commonwealth Defendants will contribute up to 50 percent of the costs for the Private Third Party not to exceed $100,000 and the City Defendants will pay the remaining costs up to $400,000.  *Id.* ¶¶ I.A.5, II.I.

b.     ***Decisions by the City Defendants on Independent Surveyors' Recommendations*** – The Agreement reflects the Plaintiffs' request that the City Defendants implement all recommendations made by the surveyors.  Agreement ¶ III.A.  Based on this request, the City Defendants will notify Plaintiffs' counsel, generally within 45 days of receipt of a recommendation from DOJ or the Private Third Party, as to whether they will implement the recommendation or schedule a hearing before the Philadelphia County Board of Elections (the Board).  *Id.*

(1)     If the Plaintiffs disagree with the City Defendants' decision to schedule a hearing concerning a recommendation, then the parties will meet and confer within 30 days of the City Defendants' notification to the Plaintiffs.  *Id.* ¶ III.B.[5]

---

to accommodate a polling place.  Agreement ¶ III.G.3(a).

    [5]  There are three situations in which the City Defendants need not either implement a recommendation or schedule a hearing and, thus, there can be no appeal to the Magistrate Judge: (1) if the recommendation involves permanent modifications to a publicly owned building; (2) if the recommendation is to relocate the polling place to a site when the owner refuses to allow the City Defendants to use the facility as a polling place; and (3) if the owner of a non-City owned polling place refuses to allow implementation of recommendations for temporary modifications as to which consent is necessary after the City Defendants offer to pay the reasonable costs for the modifications. Agreement ¶¶ III.C, III.D, III.H.  In addition, no hearings by the Board or the Magistrate Judge will be held on recommendations concerning temporary signage, but, rather, the City Defendants' compliance with such recommendations will be assessed by whether:  they post the temporary signs at the election place prior to election day; they instruct poll workers to assure that the signs are

(2)      If the parties are unable to reach consensus to resolve the dispute, the City Defendants will schedule a hearing before the Board, generally within 60 days after the date of the parties' conference.  *Id.* ¶ III.E.  Plaintiffs, DOJ, the Commonwealth Defendants and others may present evidence at these hearings, but their failure to do so or to participate will not limit or restrict their rights to seek review by the Magistrate Judge, as described below.  *Id.* ¶ III.F.[6]

(3)      The Board will issue a decision on whether to accept or reject the recommendation no later than 15 days after the hearing and the City Defendants will notify Plaintiffs' counsel within seven days after the Board issues its decision.  *Id.* ¶ III.G.

c.      ***Judicial Review of Decisions by the City Defendants to Reject Recommendations of the Independent Surveyors --*** If the Board, after a hearing, decides to not implement a recommendation of the independent surveyor, the Plaintiffs can request a *de novo* hearing before the Magistrate Judge on whether the recommendation should be implemented. Agreement ¶¶ IV.A, IV.B.  The Magistrate Judge, following the evidentiary hearing, will issue a decision on whether the City Defendants must adopt the disputed recommendation based on whether the challenged polling places can reasonably be made temporarily accessible on election day or can reasonably be relocated to an accessible location within the division or an adjacent

_____

posted and provide them with additional signs to post in the event that the previously-posted signs were removed; and instruct election day inspectors to check that the signs are posted and replace any missing signs.  *Id.* ¶ V.E.

[6]      The City Defendants are not required to make decisions on implementing recommendations, meet with Plaintiffs' counsel to discuss disputes, hold hearings, or issue decisions during the period from 45 days prior to any election until 30 days after an election.  Agreement ¶ III.I.

division, and, if raised by the City Defendants, whether the disputed recommendation would fundamentally alter the City's voting program or constitute an undue financial or administrative burden on the City pursuant to the ADA and applicable case law. *Id.* ¶ IV.B. The parties can appeal any decision of the Magistrate Judge to the District Court pursuant to Federal Rule of Civil Procedure 72(a). *Id.* ¶ IV.C.

   d. ***Implementation of Recommendations and Decisions*** -- The City Defendants will implement all recommendations of the independent surveyors to which they agreed and all orders of the Magistrate Judge and District Court, generally in the election that follows the agreement or order. Agreement ¶¶ V.A, V.B. The City Defendants can seek relief from their agreement to implement a recommendation by meeting and conferring with Plaintiffs' counsel and, if unable to reach consensus, by petitioning the Magistrate Judge for relief pursuant to Federal Rule of Civil Procedure 60. *Id.* ¶ V.D.

   e. ***Selection of Future Polling Places*** -- The City Defendants will take steps to assure that polling places selected through the November 2012 election will be accessible. Agreement ¶ VI.A. To that end, the City Defendants will survey all new proposed polling locations (using the survey instrument); provide Plaintiffs' counsel with notification of the new polling location, the reason a new location was necessary, and a copy of the completed survey. If the Plaintiffs object to the proposed new polling place, the process for Board hearings and judicial review will be utilized. *Id.*

   f. ***Changes to Alternative Ballot Application*** -- The City Defendants will assure that, when it orders new absentee/alternative ballot applications, they will make clear that voters with disabilities who check the "absentee" box will be required to cast their ballots by the

Friday prior to the election and those who check the "alternative" box will be allowed to cast their ballots until the close of polls on election day.  Agreement ¶ VI.B.1.  Until new forms are ordered, the City Defendants will include a notice that explains that difference to voters who request an absentee/alternative ballot.  *Id.* ¶ VI.B.2.

   g. ***Attorneys' Fees, Litigation Expenses, and Costs*** -- The Defendants will pay to Plaintiffs' counsel $360,000 for attorneys' fees, litigation expenses, and costs through the date of final approval of the proposed Agreement, subject to the Court's approval pursuant to Federal Rule of Civil Procedure 23(h).  Agreement ¶ IX.A.

   h. ***Retention of Jurisdiction*** -- Upon final approval of the Agreement by the Court, the case will be dismissed with prejudice. Agreement ¶ IX.G.  However, the Court will retain jurisdiction over the litigation for the purposes of interpretation and enforcement of compliance with the Agreement.  *Id.* ¶ IX.D.

   i. ***Termination of the Agreement --*** The Agreement (including the Plaintiffs' and class members' release of claims) will be terminated on March 31, 2013.  *Id.* ¶ IX.E.

  10. Plaintiffs request that the Court preliminarily approve the proposed Settlement Agreement.  "'[I]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the [C]ourt [will] direct that ... notice be given to the class members of a formal fairness hearing.'"  *Kaplan v. Chertoff*, Civil Action No. 06-5304, 2008 WL 200108 at * 11 (E.D. Pa. Jan. 24, 2008) (citation omitted).  Each of these criteria for preliminary approval of the Settlement Agreement is satisfied.

a.       First, there can be little doubt that the Agreement is the result of "serious,

informed, non-collusive negotiations."   The Agreement was reached only after the parties

completed extensive discovery and the Court issued a comprehensive summary judgment

opinion that set forth the law of the case on a number of disputed legal issues.  The negotiations

were conducted by experienced counsel at arms-length and supervised by the Court.

b.       Second, the Agreement does not give preferential treatment to the class

representatives or any particular segments of the class.  All class members are treated equally.

*See Kaplan*, 2008 WL 200108 at *11 (in granting preliminary approval to settlement of Rule

23(b)(2) class action, the court noted that the agreement "provides injunctive relief in the form

of a process," thus assuring equal benefits to all class members).

c        Finally, the Agreement falls within the range of possible approval analyzed

in accordance with the criteria set forth by the Third Circuit's decision in *Girsh v. Jepson*, 521

F.3d 153, 157 (3d Cir. 1975), and its progeny.  *See In re AT & T Corp.*, 455 F.3d 160, 164-65

(3d Cir. 2006); *Kaplan*, 2008 WL 200108 at *11; *Bradburn Parent Teacher Store, Inc. v. 3M

(Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 330 (E.D. Pa. 2007) (Padova, J.).[7]

(1)       The complexity, expense, and likely duration of the litigation weigh

in favor of approval.  This case was filed nearly two years ago.  Discovery has been completed.

There has been extensive motion practice.  Absent settlement, the Court must still rule on the

Commonwealth Defendants' pending motion to dismiss and, if it denies that motion, the

---

[7] Plaintiffs will submit a Memorandum of Law in support of final approval of the Settlement
Agreement prior to the hearing that will detail the fairness, reasonableness, and adequacy of the
Agreement in accordance with Rule 23(e)(2).  Plaintiffs also will submit a separate Motion for
Attorneys' Fees, Litigation Expenses, and Costs in accordance with Rule 23(h).

Commonwealth Defendants could seek an opportunity for discovery.  A hearing on the pending permanent injunction motion would take several days and lengthy appeals would likely ensue regardless of which side prevailed at the hearing.  *See Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d  330-31.

   (2) The stage of proceedings weighs in favor of the Agreement.  The parties have completed discovery, which provided the Plaintiffs and their counsel with the knowledge they needed to make an informed decision about the merits of the Agreement.  *See Kaplan*, 2008 WL 200108 at *11; *Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 331-32.

   (3) The risks of establishing liability weigh in favor of the Agreement.  Although Plaintiffs are confident that they could establish liability, the case raises legal questions of first impression in this Circuit (indeed, anywhere in the country) that an appellate court might view differently than did the District Court in its summary judgment ruling.  Plaintiffs cannot disregard that potential risk.

   (4) Even greater than the risk of establishing liability, Plaintiffs had to consider the risk that they would not be able to secure greater relief than that which is afforded by the Agreement.  The Agreement provides Plaintiffs with much of the relief they sought -- (a) independent surveys of all Philadelphia polling places that comprehensively assess the accessibility of polling sites; (b) a neutral process for the Plaintiffs to challenge most decisions by the City Defendants to not implement the independent surveyors' recommendations; and (c) an agreement by the City Defendants to make modifications recommended made by the surveyors or, if challenged by the City Defendants, to make any modifications required by the

Magistrate and Court.  Moreover, the City Defendants will begin to implement the Agreement quickly, thus affording Plaintiffs and class members relief far sooner than any relief they might secure following further litigation in this Court and subsequent appeals that could take several years.  Accordingly, the benefits afforded by the Agreement far outweigh the potential risks of seeking further relief through continued litigation.

   (5) Consideration of the range of reasonableness of the settlement in light of the best possible recovery and the risks of litigation also weighs in favor of approval of the Agreement.  The benefits conferred by the Agreement compare favorably to the best possible recovery that Plaintiffs could have secured and fall well within the range of  reasonableness. Again, the Agreement provides the Plaintiffs with almost all of the relief that they ultimately could have secured if they prevailed at the hearing and following appeals and if the Court, using its discretion to shape injunctive relief, afforded the Plaintiffs all of the relief they had sought. Given the attendant risks of litigation (including, but not limited to, the delays that would accompany further litigation and appeals), the Agreement's benefits to class members are significant.

  11. Rule 23(e)(1) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  The Court "'should consider both the mode of dissemination and its content to assess whether the notice is sufficient.'" *Kaplan*, 2008 WL 200108 at *11 (citation omitted).

  a. The parties propose to notify the Class through publication notice in the form submitted as Attachment 3.  The notice summarizes the litigation and the terms of the Agreement (including the provision relating to attorneys' fees and the release of claims); informs

class members about the fairness hearing and their right to participate in that hearing; informs

class members about their right to object to the Agreement; affords them information about how

to receive a copy of the Agreement; and provides contact information for class counsel. The

content of the notice is thus sufficient. *Cf. Kaplan*, 2008 WL 200108 at *12 (notice in Rule

23(b)(2) class settlement was sufficient where it described the litigation, defined the class,

explained the settlement, release, and fairness hearing, described how to file objections, and

provided contact information for class counsel); *Bradburn Parent Teacher Store, Inc.*, 513 F.

Supp. 2d at 329 (similar).

        b.     In cases certified under Rule 23(b)(2), "'the stringent requirement ... that

members of the class received the best notice practicable under the circumstances, including

individual notice to all members who can be identified through reasonable efforts, is

inapplicable.'" *Kaplan*, 2008 WL 200108 at *12 (quoting *Walsh v. Great Atl. & Pac. Tea Co.*,

726 F.2d 956, 962 (3d Cir. 1983)). Given that class members are not required to take any actions

to reap the benefits of the Agreement and that it would be virtually impossible to identify voters

with disabilities, the publication notice satisfies Rule 23(e). *See id.* at *12-*13. Specifically, the

parties propose to publish the notice as follows:

        (1)     The City Defendants will cause the publication notice to be

published in the *Philadelphia Daily News* and the *Philadelphia Tribune*. The notice will be

published twice in each paper on two different dates with the second publication within ten (10)

days of the initial publication. All publication notices will be completed within thirty (30) days

of the Court's preliminary approval of the proposed Settlement Agreement and no later than four

(4) weeks prior to the hearing on final approval of the proposed Settlement Agreement. The City

will also post the notice on its website within thirty (30) days after preliminary approval of the Agreement.

(2)     Within fourteen (14) days of the preliminary approval of the Settlement Agreement, the Disability Rights Network of Pennsylvania and Liberty Resources, Inc. will post the notice on their websites.

c.     Counsel for Plaintiffs and the City Defendants will file a certification of notice with the Court no later than ten (10) days prior to the date of the hearing on final approval of the proposed Settlement Agreement to certify their compliance with their respective notice obligations.

12.     Plaintiffs also request that: (a) the Court establish a date for the hearing on final approval of the proposed Settlement Agreement; (b) that any objections to the proposed Settlement Agreement and notices of intention to appear be submitted no later than fourteen (14) days prior to the hearing date; and (c) that Plaintiffs' memorandum of law in support of the final approval of the proposed Settlement Agreement be submitted no later than ten (10) days prior to the hearing date.

WHEREFORE, Plaintiffs respectfully request that the Court grant this Motion.

Respectfully submitted,

Dated:  April 20, 2009          By:     /s/ Robert W. Meek
                                         Robert W. Meek
                                         PA Attorney I.D. No. 27870
                                         Robin Resnick
                                         PA Attorney I.D. No. 46980
                                         Disability Rights Network of PA
                                         1315 Walnut Street, Suite 400
                                         Philadelphia, PA  19107-4798
                                         (215) 238-8070

14

Stephen F. Gold
PA Attorney I.D. No. 09980
125 South 9th Street, Suite 700
Philadelphia, PA  19107
(215 ) 627-7100

Seth Kreimer
PA Attorney I.D No. 26102
3400 Chestnut Street
Philadelphia, PA  19104
(215) 898-7447

Counsel for Plaintiffs and the Class

**CERTIFICATE OF SERVICE**

I, Robert W. Meek, certify that Plaintiffs' Motion for Preliminary Approval of the Proposed Class Action Settlement Agreement and for Approval of Class Notice and proposed Order were filed with the Court's ECF system on April 20, 2009 and are available for viewing and downloading from the ECF system by the following counsel who consented to electronic service:

Abbe F. Fletman, Esquire
Kevin Greenberg, Esquire
Christine E. Thelen, Esquire
Flaster/Greenberg, P.C.
Eight Penn Center, 15th Floor
1628 John F. Kennedy Boulevard
Philadelphia, PA  19103

Sue Ann Unger, Esquire
Senior Deputy Attorney General
Office of Attorney General
21 South 12th Street, 3rd Floor
Philadelphia, PA  19107

/s/ Robert W. Meek
Robert W. Meek