IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| KATHLEEN KERRIGAN, ANTHONY HOLIDAY, MICHAEL J. McSHEA, TARIQ MANGUM, RENEE CROSBY, and CAROLYN DAVENPORT, on behalf of themselves and all others similarly situated, | : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil Action No. 07-CV-687 |
| THE CITY OF PHILADELPHIA; MARGARET TARTAGLIONE, ANTHONY CLARK and JOSEPH J. DUDA, in their official capacities as Philadelphia City Commissioners; PENNSYLVANIA DEPARTMENT OF STATE and PEDRO A. CORTÉS, in his official capacity as Secretary of the Commonwealth, | : : : : : : : | Class Action |
| Defendants. | : : : | |

_____:

**PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs and the Class, through their

counsel, submit this Motion for Final Approval of the Class Action Settlement.  The Settlement

Agreement should be approved because it is fair, adequate, and reasonable.  In support of this

Motion, Plaintiffs submit the accompanying Memorandum of Law and Exhibits, which are

incorporated by reference herein.

Respectfully submitted,

Dated:  July 2, 2009       By:    /s/ Robert W. Meek          
Robert W. Meek
PA Attorney I.D. No. 27280
Robin Resnick
PA Attorney I.D. No. 46980
Disability Rights Network of PA
1315 Walnut Street, Suite 400
Philadelphia, PA  19107-4798
(215) 238-8070

By:    /s/ Stephen F. Gold          
Stephen F. Gold
PA Attorney I.D. No. 09980
125 South Ninth Street, Suite 700
Philadelphia, PA  19107
(215) 627-7100

By:    /s/ Seth Kreimer          
Seth Kreimer
PA Attorney I.D. No. 26102
3400 Chestnut Street
Philadelphia, PA  19104
(215) 898-7447

Counsel for Plaintiffs and the Class

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

—————————————————————————
                                 :

KATHLEEN KERRIGAN, ANTHONY     :
HOLIDAY, MICHAEL J. McSHEA,     :
TARIQ MANGUM, RENEE CROSBY, and  :
CAROLYN DAVENPORT, on behalf of   :
themselves and all others similarly situated, :
                                 :

           Plaintiffs,     :
                                 :    Civil Action No. 07-CV-687
       v.                 :
                                 :    Class Action
THE CITY OF PHILADELPHIA; MARGARET :
TARTAGLIONE, ANTHONY CLARK and    :
JOSEPH J. DUDA, in their official capacities as :
Philadelphia City Commissioners;     :
PENNSYLVANIA DEPARTMENT OF STATE  :
and PEDRO A. CORTÉS, in his official capacity :
as Secretary of the Commonwealth,    :
                                 :

           Defendants.    :
—————————————————————————:

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

      Plaintiffs and the Class, through their counsel, submit this Memorandum of Law in

Support of Final Approval of the Class Action Settlement Agreement.  Plaintiffs previously

submitted a copy of the Settlement Agreement as Attachment 2 to their Unopposed Motion for

Preliminary Approval of the Proposed Class Action Settlement Agreement and for Approval of

Class Notice.  Based upon the arguments and authorities set forth below and the information to

be presented at the fairness hearing scheduled for July 14, 2009, Plaintiffs and the Class

respectfully submit that the Motion should be granted.

## BACKGROUND AND PROCEDURAL HISTORY OF THE LITIGATION

Plaintiffs, individuals with mobility disabilities, filed this lawsuit in February 2007 against the Philadelphia Board of Elections and the City Commissioners (collectively, the City Defendants) to challenge the inaccessibility of polling places in Philadelphia.  Plaintiffs alleged that the City Defendants violated Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134, and Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794, by, *inter alia*, failing to maximize the number of accessible polling places, thus, denying voters with mobility disabilities equal access to Philadelphia's voting program.  Plaintiffs sought declaratory and injunctive relief.  After the Court denied their Motion to Dismiss in January 2008, *Kerrigan v. Phila. Bd. of Elec.*, Civil Action No. 07-687, 2008 WL 250522 (E.D. Pa. Jan. 29, 2008), the City Defendants filed an Answer that denied all allegations.

Plaintiffs filed a Motion for Permanent Injunction in January 2008.  The Motion identified polling places that, based on surveys during the November 2007 election, were not accessible even though the City Defendants had identified them as accessible.  The Motion also identified several inaccessible polling places that could be relocated to accessible sites.  The Court initially scheduled a hearing on the Permanent Injunction Motion for March 2008, but, at the request of the Defendants, subsequently postponed the hearing until June 2008.

Over objections by the City Defendants, the Court on March 13, 2008 certified this case to proceed as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2).  The Class is defined as "all eligible Philadelphia County voters with mobility disabilities who either became eligible to vote or developed a mobility disability after October 22, 2001." *Kerrigan v. Phila. Bd. of Elec.*, 248 F.R.D. 470 (E.D. Pa. 2008).

2

The parties conducted extensive discovery.  Plaintiffs reviewed nearly 30,000 pages of documents produced by the City Defendants.  Meek Decl. ¶ 2(a) (Exh.A).  Both the Plaintiffs and the City Defendants propounded and responded to written discovery requests.  *Id.* ¶ 2(b).  The City Defendants took 25 depositions and Plaintiffs deposed Robert Lee, Voting Registration Commissioner for the City Commissioners Office, who the City Defendants designated as a Rule 30(b)(6) witness on issues relating to polling place selection and accessibility and the alternative ballot process in Philadelphia.  *Id.* ¶¶ 2(c)-2(d).  Plaintiffs also hired an expert witness who prepared a report in support of their Motion for Permanent Injunction and who the City Defendants deposed.  *Id.* ¶ 2(f).  In addition, the Plaintiffs in the November 2007 and April 2008 elections surveyed over 250 polling places that the City Defendants had designated as accessible and found that many were not, in fact, accessible.  *Id.* ¶ 2(e).

Prior to the scheduled June 2008 hearing on Plaintiffs' Motion for Permanent Injunction, the City Defendants filed a Motion for Summary Judgment.  As a result of that Motion, the Court postponed the permanent injunction hearing.  The City Defendants raised numerous challenges to Plaintiffs' ADA and RA claims.  They also asserted that the Commonwealth was an indispensable party to the litigation.

In August 2008, the Court denied in part and granted in part the City Defendants' Motion for Summary Judgment.  *Kerrigan v. Phila. Bd. of Elec.*, Civil Action No. 07-687, 2008 WL 3562521 (E.D. Pa. Aug. 14, 2008).  The Court rejected the City Defendants' challenges to the Plaintiffs' ADA and RA claims.  Significantly, the Court ruled:  (1) that plaintiffs had presented sufficient evidence that the City's voting program was not accessible because a "significant percentage" of the polling places were inaccessible; (2) that the City cannot rely solely on the

3

alternative ballot process to make its voting program accessible, but, rather, has an obligation under the ADA and RA to assure that voters with mobility disabilities "are able to vote in their neighborhood polling places" to the extent that it is reasonable for Defendants to provide accessible polling places; and (3) that the Voting Accessibility for the Elderly and Handicapped Act (VAEH) does not conflict with and supersede the ADA and RA, but, rather, that all of those statutes require the City to maximize the number of accessible polling places and to rely on the alternative ballot process only as a last resort.  The Court, however, agreed with the City Defendants that the Commonwealth is an indispensable party and ordered the Plaintiffs to join the Pennsylvania Department of State as a defendant in the litigation.[1]  The Court subsequently denied the City Defendants' Motion for Clarification, Reconsideration, or, in the Alternative, Certification for Interlocutory Appeal of its summary judgment ruling.

On August 18, 2008, the Plaintiffs filed their Amended Complaint in accordance with the Court's summary judgment ruling.  In addition to stating ADA and RA claims against the City Defendants, the Amended Complaint asserts claims under the VAEH, the ADA, and the RA against the Pennsylvania Department of State and the Secretary of the Commonwealth (collectively, the Commonwealth Defendants).  The Commonwealth Defendants filed a Motion to Dismiss in September 2008, which is pending.

---

[1]  The Court also required the Plaintiffs to substitute the City of Philadelphia for the Philadelphia Board of Elections.

## BACKGROUND AND SUMMARY OF THE
## PROPOSED SETTLEMENT AGREEMENT

### A.  Settlement Negotiations

At the urging of the Court in the spring of 2007, shortly after this lawsuit was filed, Plaintiffs and the City Defendants worked with the Honorable Timothy R. Rice, United States Magistrate Judge, in an effort to negotiate a settlement.  Meek Decl. ¶ 5.  Despite numerous meetings and discussions through at least November 2007, the parties were unable to reach agreement at that time.  *Id.*

After the Court issued its summary judgment decision in August 2008, the parties restarted settlement negotiations under the guidance of Magistrate Judge Rice.  Meek Decl. ¶ 6. The United States Department of Justice (DOJ), which had been investigating issues relating to the accessibility of Philadelphia's polling places but which had not instituted any litigation against the City or participated in the *Kerrigan* lawsuit as a party or *amicus*, also participated in the negotiations.  *Id.*  The parties and DOJ met frequently, by phone and in person, with Magistrate Judge Rice and had frequent discussions on their own.  *Id.*  The negotiations were arms-length, non-collusive, wide-ranging and, not infrequently, contentious.  *Id.*  After nearly seven months of negotiations, the parties finalized a Settlement Agreement (Agreement) in April 2009.  *Id.* ¶ 7.

### B.  Preliminary Approval and Class Notice

The Agreement was presented to the Court on April 20, 2009 for preliminary approval. The Court, by Order dated April 23, 2009, granted preliminary approval to the Agreement.

In its April 23, 2009 Order, the Court also approved the publication notice scheme and the content of the notice. The Notice as well as the entire Agreement has been posted on the website of the Disability Rights Network of Pennsylvania since April 29, 2009. *See* Certification of Notice of Robert W. Meek ¶ 3. The Notice also has been posted on the website of Liberty Resources, Inc., the Center for Independent Living that provides services to Philadelphians with physical disabilities, since April 24, 2009. *See id.* The City Defendants caused the notice to be published twice in both the *Philadelphia Daily News* and the *Philadelphia Tribune* and to be posted on the City's website prior to May 26, 2009. Accordingly, class members have had more than 30 days to submit any comments or objections to the Agreement.

## C. Terms of the Settlement Agreement

The Settlement Agreement confers significant benefits on members of the Class by providing a comprehensive process to maximize the number of accessible polling places in the City. This process includes the following steps.

**1.** **Surveys of Polling Places** -- Using a comprehensive survey instrument developed by the parties and DOJ, all Philadelphia polling places will be surveyed by independent entities to assess their accessibility to voters with mobility disabilities. Agreement ¶¶ II.A-II.E & Att. A. The surveys will begin immediately after DOJ enters into its separate settlement agreement with the City Defendants. Agreement ¶ II.D.[2] DOJ and an independent, qualified professional selected by Magistrate Judge Rice (the Private Third Party), using an agreed-upon Survey Instrument, each will survey fifty percent of polling places designated by the City Defendants

---

[2] DOJ entered into a separate settlement with the City Defendants, a copy of which is attached as Exhibit F to the Agreement.

as accessible (*i.e.*, all polling places other than those designated as "NN" or "NL").  *Id.* ¶¶ I.A, II.B & Exh. A.[3]  DOJ also will survey the polling places designated by the City Defendants as inaccessible (*i.e.*, "NN" or "NL").  *Id.* ¶ II.B.

The Private Third Party will review no fewer than 120 polling places every two months (Survey Period), excluding the period for three weeks before and three weeks after the election when no surveys will be conducted (Survey Blackout Period).  Agreement ¶¶ II.D.1-2.  DOJ will conduct as many surveys as practicable with the goal of conducting no fewer than 120 polling places surveys in each Survey Period (excluding the Survey Blackout Period).  *Id.* ¶¶ II.D.1, II.D.3.  On the dates of the primary and general elections, DOJ and the Private Third Party will evaluate further those polling places that they had found to be inaccessible in their prior surveys, but that the City Defendants have designated as accessible on election day.  *Id.* ¶ II.E.[4]

Within 30 days of the end of each Survey Period, the Private Third Party and DOJ will issue written reports that contain the results of each survey, including for each polling place surveyed and determined to be inaccessible:

> (1)     whether temporary modifications (*e.g.*, portable ramps, threshold ramps, or re-designation of "alternate" entrances as the exclusive entrances) can be used to make the polling places accessible;

---

[3] By Order dated April 27, 2009, Magistrate Judge Rice appointed Campbell Thomas & Co., a private architectural firm in Philadelphia, as the Private Third Party under the Agreement.

[4] For example, the City Defendants designate one-step buildings as accessible since the City Defendants are supposed to provide the building owners with portable ramps for use on election day. A survey prior to election day can evaluate the accessibility of the interior of the space, but the accessibility of the exterior can be evaluated only on election day when the surveyor can see whether the portable ramp has been delivered and is in place for use by voters.

> (2)     for publicly-owned polling places, whether permanent modifications can be made to make the buildings accessible;
>
> (3)     for inaccessible polling places that cannot be modified temporarily, whether the polling places can reasonably be relocated to sites that are accessible (or could be made accessible with temporary modifications) applying certain agreed-upon criteria to determine the reasonableness of the relocation;[5]
>
> (4)     whether a temporary sign should be posted on election day to an alternate accessible entrance.

Agreement ¶ II.G.

The Commonwealth Defendants will contribute up to 50 percent of the costs for the Private Third Party not to exceed $100,000.  Agreement ¶ II.*I*.  The City Defendants will pay the remaining costs up to $400,000.  *Id.* ¶¶ I.A.5, II.*I*.

**2.     *Decisions by the City Defendants on Independent Surveyors' Recommendations*** – After the surveyors make their recommendations, the City Defendants will notify Plaintiffs' counsel (generally within 45 days of receipt of a recommendation from DOJ or the Private Third Party) as to whether they will implement the recommendation or schedule a hearing before the Philadelphia County Board of Elections (the Board).  Agreement ¶ III.A.   If the Plaintiffs dis-

---

[5] The criteria used to assess reasonableness of potential relocation sites include:  (1) whether the proposed site is within the polling division or an adjacent division; (2) whether the proposed site is no more than five City blocks from the furthest edge of the division; (3) whether there are any significant dangers or obstacles that would preclude safe travel by pedestrians; (4) whether the proposed site is large enough to accommodate the polling place; and (5) whether the proposed site has the physical and mechanical means necessary to accommodate a polling place.  Agreement ¶ II.G.3(a).

agree with the City Defendants' decision to schedule a hearing concerning a recommendation, then the parties will meet and confer within 30 days of the City Defendants' notification to the Plaintiffs. *Id.* ¶ III.B.[6]

If the parties are unable to reach consensus to resolve the dispute, the City Defendants will schedule a hearing before the Board, generally within 60 days after the date of the parties' conference. *Id.* ¶ III.E. Plaintiffs, DOJ, the Commonwealth Defendants and others may present evidence at these hearings, but their failure to do so or to participate will not limit or restrict their rights to seek review by the Magistrate Judge, as described below. *Id.* ¶ III.F.[7] The Board will issue a decision on whether to accept or reject the recommendation no later than 15 days after the hearing and the City Defendants will notify Plaintiffs' counsel of the Board's decision within seven days. *Id.* ¶ III.G.

---

[6] There are three situations in which the City Defendants need not either implement a recommendation or schedule a hearing and, thus, there can be no appeal by Plaintiffs to the Magistrate Judge: (1) if the recommendation involves permanent modifications to a publicly owned building; (2) if the recommendation is to relocate the polling place to a site when the owner of the proposed site refuses to allow the City Defendants to use the facility as a polling place; and (3) if the owner of a non-City owned polling place refuses to allow implementation of recommendations for temporary modifications as to which consent is necessary after the City Defendants offer to pay the reasonable costs for the modifications. Agreement ¶¶ III.C, III.D, III.H. In addition, no hearings by the Board or the Magistrate Judge will be held on recommendations concerning temporary signage, but, rather, the City Defendants' compliance with such recommendations will be assessed by whether: they post the temporary signs at the election place prior to election day; they instruct poll workers to assure that the signs are posted and provide them with additional signs to post in the event that the previously-posted signs were removed; and instruct election day inspectors to check that the signs are posted and replace any missing signs. *Id.* ¶ V.E.

[7] The City Defendants are not required to make decisions on implementing recommendations, meet with Plaintiffs' counsel to discuss disputes, hold hearings, or issue decisions during the period from 45 days prior to any election until 30 days after an election. Agreement ¶ III.*I.*

9

**3.      *Judicial Review of Decisions by the City Defendants to Reject Recommendations of the Independent Surveyors* --** If the Board, after a hearing, decides not to implement a recommendation of the independent surveyor, the Plaintiffs can request a *de novo* hearing before the Magistrate Judge on whether the recommendation should be implemented.  Agreement ¶¶ IV.A, IV.B.  The Magistrate Judge, following the evidentiary hearing, will issue a decision on whether the City Defendants must adopt the disputed recommendation based on whether the challenged polling place can reasonably be made temporarily accessible on election day or can reasonably be relocated to an accessible location within the division or an adjacent division, and, if raised by the City Defendants, whether the disputed recommendation would fundamentally alter the City's voting program or constitute an undue financial or administrative burden on the City pursuant to the ADA and applicable case law.  *Id.* ¶ IV.B.  The parties can appeal any decision of the Magistrate Judge to the District Court pursuant to Federal Rule of Civil Procedure 72(a).  *Id.* ¶ IV.C.

**4.      *Implementation of Recommendations and Decisions* --** The City Defendants will implement all recommendations of the independent surveyors to which they agreed and all orders of the Magistrate Judge and District Court, generally in the election that follows the agreement or order.  Agreement ¶¶ V.A, V.B.  The City Defendants can seek relief from their agreement to implement a recommendation by meeting and conferring with Plaintiffs' counsel and, if unable to reach consensus, by petitioning the Magistrate Judge for relief pursuant to Federal Rule of Civil Procedure 60.  *Id.* ¶ V.D.

**5.      *Selection of Future Polling Places* --** The City Defendants will take steps to assure that polling places selected through the November 2012 election will be accessible.

Agreement ¶ VI.A.  To that end, the City Defendants will survey all new proposed polling locations (using the Survey Instrument); provide Plaintiffs' counsel with notification of the new polling location, the reason a new location was necessary, and a copy of the completed survey. If the Plaintiffs object to the proposed new polling place, the process for Board hearings and judicial review will be utilized.  *Id.*

In addition to the process adopted to maximize the number of accessible polling places outlined above, the Agreement also requires the City Defendants to assure that, when it orders new absentee/alternative ballot applications, they will make clear that voters with disabilities who check the "absentee" box will be required to cast their ballots by the Friday prior to the election and those who check the "alternative" box will be allowed to cast their ballots until the close of polls on election day.  Agreement ¶ VI.B.1.  Until new forms are ordered, the City Defendants will include a notice that explains that difference to voters who request an absentee/alternative ballot.  *Id.* ¶ VI.B.2.

If the Agreement is approved, the Defendants will pay to Plaintiffs' counsel $360,000 for attorneys' fees, litigation expenses, and costs through the date of final approval of the proposed Agreement, subject to the Court's approval pursuant to Federal Rule of Civil Procedure 23(h). Agreement ¶ IX.A.[8]

Upon final approval of the Agreement by the Court, the case will be dismissed with prejudice. Agreement ¶ IX.G.  However, the Court will retain jurisdiction over the litigation for the purposes of interpretation and enforcement of compliance with the Agreement.  *Id.* ¶ IX.D.

---

[8]  Plaintiffs have today submitted a Motion for an Award of Attorneys Fees, Litigation Expenses, and Costs in accordance with Rule 23(h).

The Agreement (including the Plaintiffs' and class members' release of claims) will be terminated on March 31, 2013.  *Id.* ¶ IX.E.

## **ARGUMENT**

### **THE PROPOSED SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE AND SHOULD BE APPROVED BY THE COURT.**

#### A.  **Class Notice was Adequate.**

The Constitution and the Federal Rules of Civil Procedure both require adequate notice of a proposed settlement.  *See Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 327 (E.D. Pa. 2007) (Padova, J.); Fed. R. Civ. P. 23(e)(1). The notice must be reasonably calculated to "'apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 328 (citation omitted).

As this Court ruled in its April 23, 2009 Order, the publication notice "adequately apprise[d] class members of the litigation; the terms of the Agreement and the class members' right to object; the fairness hearing and the class members' right to participate; and information on how they can receive a copy of the Agreement."  The content of the notice, therefore, was adequate to protect the class members' due process rights.  *Cf. Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 328.

Given that the identities of specific voters with mobility disabilities who would be class members is unknown and unknowable, individual notice simply was not possible in this case. The parties instead provided only publication notice.  The City Defendants had notices published twice in two of Philadelphia's leading newspapers, *The Philadelphia Daily News*, and *The*

*Philadelphia Tribune*, as well as on its website.  In addition, publication notice was targeted particularly to potential class members through the posting of the notice on the websites of the Disability Rights Network of Pennsylvania and Liberty Resources, Inc., two of the key disability rights organizations in the region.  All of the notices were published prior to May 26, 2009 giving class members more than a month to submit any comments or objections.  Given the circumstances of this case, the publication notice scheme comported with the requirements of due process and the Federal Rules.  *Cf. Hawker v. Consovoy*, 198 F.R.D. 619, 621 & n.5 (D.N.J. 2001) (in Rule 23(b)(2) class action on behalf of inmates, posting of settlement notice in prisons and newspapers advising them of settlement and opportunity to comment was adequate).

### B.  The Standards Used To Assess The Adequacy Of A Proposed Class Action Settlement.

The standards to be applied in determining whether to approve a class action settlement are well-established.  "Compromises of disputed claims are favored by the courts."  *Williams v. First National Bank*, 216 U.S. 582, 595 (1910); *accord In re General Motors Pick-Up Fuel Tank Products Liability Litig.* (*GMC*), 55 F.3d 768, 784 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995). Settlements are particularly favored "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *GMC*, 55 F.3d at 784; *accord McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 458 (D.N.J. 2008); *Parks v. Portnoff Law Assoc.*, 243 F. Supp.2d 244, 249 (E.D. Pa. 2003).

Under the Federal Rules of Civil Procedure, a court should approve a class action settlement if it is "fair, adequate and reasonable."  Fed. R. Civ. P. 23(e); *accord GMC*, 55 F.3d at 785; *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118 (3d Cir. 1990); *Girsh v. Jepson*, 521 F.2d

153, 157 (3d Cir. 1975); *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir.), *cert. denied*, 419 U.S. 900 (1974). "'The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court.'" *Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 327 (citation omitted).

An initial "'presumption of fairness'" attaches to a class action settlement when the court finds that: "'(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (citation omitted); *accord Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 329-30. A presumption of fairness is warranted in this case. The Agreement was the result of non-collusive, intensive, often contentious, arms-length negotiations that lasted for nearly seven months, including multiple meetings in-person and by telephone with Magistrate Judge Rice to facilitate the process. Meek Decl. ¶¶ 6-7. Plaintiffs' counsel, who are seasoned litigators with many years of experience in disabilities rights litigation, agreed to the settlement only after they had the opportunity -- through discovery, motions practice, and negotiations -- to fully assess and consider all legal and factual issues. *See id.* ¶¶ 2-8, 11. Finally, to date, there have been no objections to the settlement.

The Third Circuit has enumerated a number of elements which a district court may consider in evaluating the fairness of a class settlement:

(1)    the complexity and likely duration of the litigation;

(2)    the reaction of the class to the settlement;

(3)    the stage of the proceedings and the amount of discovery completed;

(4)     the risks of establishing liability;

(5)     the risks of establishing damages;

(6)     the risks of maintaining a class action;

(7)     the ability of defendant to withstand a greater judgment;

(8)     the range of reasonableness of the settlement in light of the best recovery; and,

(9)     the range of reasonableness of the settlement in light of the attendant risks of litigation.

*GMC*, 55 F.3d at 785; *accord Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 330.

In assessing a proposed settlement, "[c]ourts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *accord Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d at 801. Courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson*, 450 U.S. at 88 n.14. "While the court is obligated to ensure that the proposed settlement is in the best interest of the class members by reference to the best possible outcome, it must also recognize that settlement typically represents a compromise and not hold counsel to an impossible standard." *In re Aetna Inc. Securities Litig.*, MDL No. 1219, 2001 WL 20928 at *6 (E.D. Pa. Jan. 4, 2001) (Padova, J.).

## C.  The Proposed Settlement Agreement Is Fair, Adequate, And Reasonable.

Examining the Agreement in light of the criteria outlined above, it must be concluded that it is fair, adequate, and reasonable and in the best interests of the class members.

### 1. **Complexity And Likely Duration of the Litigation**

"This factor is intended to capture 'the probable costs, in both time and money, of continued litigation.'" *GMC*, 55 F.3d at 812 (citation omitted); *Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 330.  This case has already been pending over two years, and further litigation likely would prove complicated and costly.  Although the Plaintiffs and the City Defendants had completed discovery at the time of settlement, the Court had not yet ruled on the Commonwealth Defendants' pending Motion to Dismiss.  If the Court denied that Motion, the Commonwealth presumably would be provided with an opportunity for discovery and to file potentially dispositive motions.  The subsequent trial of this action (including trial preparation) would be time-consuming.[9]

This case would require resolution of complex factual issues at trial, including potentially:

  » identification of numerous inaccessible polling places in Philadelphia and whether they could be made accessible or relocated to other potential sites;

  » how the alternative and emergency alternative ballot process works on paper and in practice;

  » whether the City Defendants rejected relocations of inaccessible polling places to feasible, accessible locations;

---

[9] Further litigation also would entail further costs, including expert witness costs at trial. Though now financed by Plaintiffs' counsel, these costs ultimately would be borne by the public if the Plaintiffs prevail, which supports approval of the Agreement. *Hawker v. Consovoy*, 198 F.R.D. at 628.

» whether the Commonwealth Defendants erroneously determined that all Philadelphia polling places are accessible or could not be made accessible or relocated to accessible sites.

Meek Decl. ¶ 9(a). The complexity of the factual issues would likely be further complicated by disputes concerning the relevance of some of these issues (*e.g.*, impact of a potential polling place relocation on persons who are older, but not necessarily disabled). *Id.* Evidentiary motion practice would be likely.

Even more than the complicated factual issues, this case raised numerous legal issues, most of which involve matters of first impression. Although the Court resolved many of these hotly disputed legal issues in its ruling on the City Defendants' summary judgment motion (which would be the law of the case), the Commonwealth Defendants raised equally challenging legal issues in their Motion to Dismiss, including, for example: the scope of their obligations under the VAEH regarding local polling place accessibility; whether the Commonwealth Defendants were entitled under the VAEH to rely on the City Defendants' assessments of polling places; whether Plaintiffs are judicially estopped from asserted claims against the Common-wealth Defendants; and whether the Plaintiffs stated actionable claims against the Common-wealth Defendants under the ADA and RA. Meek Decl. ¶ 9(b). Both the City and the Commonwealth Defendants would almost certainly appeal adverse legal determinations and how the appellate courts would resolve these issues is unknown. These novel legal issues and the uncertainty of their outcome weigh in favor of the proposed Agreement. *See Parks v. Portnoff Law Assoc.*, 243 F. Supp.2d 244, 251 (E.D. Pa. 2003).

17

Given the novelty and complexity of the factual and legal issues raised in this case, post-trial motions and appeals following judgment would be inevitable. This would result in ever increasing costs and delay.

Although Plaintiffs are convinced that they would ultimately prevail if this case were litigated through trial and appeals, the delays caused by further litigation of this case if it were not settled "would only be inimical to the interests of the plaintiff class." *Foe v. Cuomo*, 700 F. Supp. 107, 112 (E.D.N.Y. 1988), *aff'd*, 892 F.2d 196 (2d Cir. 1989) (per curiam), *cert. denied*, 498 U.S. 972 (1990). The value of having the benefits from this litigation at this time also must be considered favorably in assessing the adequacy of the Settlement Agreement. *See GMC*, 55 F.3d at 812; *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. at 254.

## 2. <u>Reaction of the Class</u>

"'This factor attempts to gauge whether members of the class support the settlement.'" *Parks v. Portnoff Law Assoc.*, 243 F. Supp.2d at 251 (citation omitted). To date, there have been no objections to the settlement. The "total absence of objections argues in favor of the proposed Settlement." *Bradburn Parent Teacher Store, Inc.* , 513 F. Supp. 2d at 331.[10]

## 3. <u>Stage of the Proceedings</u>

The purpose of considering the stage of the proceedings and the amount of discovery taken is to assure that Plaintiffs had access to sufficient material to evaluate the case and to

---

[10]   Indeed, even a small number of objections, if they were not relevant, would still weigh in favor of approval of the Settlement Agreement. *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d at 118-19 (approving post-verdict settlement of class action, noting that only 29 of the 281 class members objected); *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d at 803 (rejecting contention that district court abused its discretion in approving class action settlement over objections of more than 20% of class members).

assess the adequacy of the settlement proposal with an informed judgment of the strengths and weaknesses of the merits of their case. *See GMC*, 55 F.3d at 813; *Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 331. Since Plaintiffs had a full opportunity to develop an adequate appreciation of the merits of the case and make an informed judgment regarding settlement, *id.*, this factor, too, weighs in favor of approval. *See Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 331-32; *Parks v. Portnoff Law Assoc.*, 243 F. Supp.2d at 251.

Plaintiffs did not enter into this Agreement until the completion of extensive formal and informal discovery with the City Defendants. Plaintiffs reviewed over 30,000 pages of documents produced by the City Defendants. Plaintiffs also reviewed the City Defendants' responses to written interrogatories. Plaintiffs deposed Robert Lee, the key official responsible for the accessibility of the City's polling places and the alternative ballot process. Plaintiffs received an expert report. Plaintiffs also responded to numerous document requests, interrogatories, and requests for admission. In addition, Plaintiffs and their witnesses, including their expert witness, were subject to 25 deposition by Defendants. Perhaps most importantly, Plaintiffs conducted on-site surveys of the accessibility of approximately 250 polling places in the November 2007 and April 2008 elections. Meek Decl. ¶ 2.

Although the Plaintiffs had not yet undertaken discovery from the Commonwealth Defendants, there would be little, if any, discovery needed by the Plaintiffs. Plaintiffs had access to the Commonwealth Defendants' policies and practices relating to polling place accessibility. In addition, Mr. Lee testified as to the Commonwealth's oversight of and interactions with the Philadelphia Board of Elections concerning accessibility of the City's polling places. This

information provided Plaintiffs with sufficient knowledge of the Commonwealth Defendants' actions and inactions to form a basis to judge their probable liability. Meek Decl. ¶ 3.

In addition to the formal and informal discovery, the breadth and complexity of many of the factual and legal issues in this case had already been explored by the time the parties finalized the Agreement through the City Defendants' and Commonwealth Defendants' motions to dismiss, the City Defendants' summary judgment motion, and extensive settlement discussions with opposing counsel and Magistrate Judge Rice. This further afforded the Plaintiffs an opportunity to assess the relative strengths and weaknesses of their case. Meek Decl. ¶¶ 4, 8; *see also Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 332-33.

### 4.  Risks of Establishing Liability

"By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." GMC, 55 F.3d at 814; *accord Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 332. In considering this factor, "the court should avoid conducting a mini-trial. Rather, the court should give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action." *Id.*; *accord Parks v. Portnoff Law Assoc.*, 243 F. Supp.2d at 251.

Although Plaintiffs were confident that they would prevail at trial, this case was not wholly devoid of risk. As noted above and as reflected in the extensive motions practice, this case presents vigorously contested factual and legal issues. Plaintiffs succeeded in persuading the Court that most of the City Defendants' substantive legal arguments lacked merit. However,

the novelty of the issues certainly raised the specter that those same legal challenges, which involved matters of first impression in this Circuit, could conceivably succeed on appeal. In addition, the court had not yet ruled on the merits of the Commonwealth Defendants' legal challenges, which also involved questions of first impression. Accordingly, these risks of establishing liability weigh in favor of approval of the Agreement. *Cf. Lan v. Ludrof*, Civil Action No. 1:006-cv-114-SJM, 2008 WL 763763 at *14 (W.D. Pa. Mar. 21, 2008) ("unsettled state of the law makes this case one where there could be no reasonable certainty, from Plaintiffs' viewpoint, that establishing liability is more likely than not"); *Parks v. Portnoff Law Assoc.*, 243 F. Supp.2d at 251-52 (existence of difficult legal issues weighs in favor of settlement).

### 5. Risks of Establishing Damages/Securing Relief

Like the inquiry into the risks of establishing liability, the inquiry into the risks of establishing damages "'attempts to measure the expected value of litigating the action rather than settling it at the current time.'" *Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 332. Although Plaintiffs sought injunctive relief (not damages) and are confident that the Court would have enjoined the Defendants from violating the ADA, RA, and VAEH, the specific contours of the injunctive relief that the Court might have granted are far less clear. The court could conceivably have declined to craft a detailed order that required the Defendants to take specific steps necessary to achieve compliance with the ADA, RA, and VAEH. Instead, the court could have given the Defendants leeway as to how they would come into compliance. Thus, Plaintiffs in this case had to consider the risk that they would not be able to secure greater relief than that which is afforded by the Agreement.

The Agreement provides Plaintiffs with much of the relief they sought -- (a) *independent* surveys of *all* Philadelphia polling places that comprehensively assess the accessibility of polling sites; (b) a neutral process for the Plaintiffs to challenge most decisions by the City Defendants not to implement the independent surveyors' recommendations; and (c) an agreement by the City Defendants to make modifications recommended made by the surveyors or, if challenged by the City Defendants, to make any modifications required by the Magistrate and Court.  Moreover, the City Defendants will begin to implement the Agreement quickly, thus affording Plaintiffs and class members relief far sooner than any relief they might secure following further litigation in this Court and subsequent appeals that could take several more years.  Accordingly, the benefits afforded by the Agreement far outweigh the potential risks of seeking further relief through continued litigation.

### 6.  <u>Risks of Maintaining Class Action Status</u>

"This factor allows the Court to weigh the possibility that, if a class were certified for trial in this case, it would be decertified prior to trial."  *Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 333.  In this case, the City Defendants raised a number of challenges to class certification.  Although it is unlikely that the Court would reconsider the matter and decertify the case prior to trial, it is conceivable that the City Defendants might pursue their certification challenges on appeal.  Since the risk of decertification, however small, was eliminated through the Agreement, this factor also favors the approval.  *See In re Aetna Inc. Securities Litig.*, 2001 WL 20928 at *8; *see also Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 333.

### 7. **Defendants' Ability to Withstand A Greater Judgment**

The Agreement does not involve payment of monetary damages and, indeed, Plaintiffs never sought damages. However, the Agreement does require both the City Defendants and Commonwealth Defendants to fund certain aspects of relief. The Commonwealth Defendants will pay up to $350,000 and the City Defendants will pay up to $400,000. The Agreement confers cost savings on the Defendants by having DOJ conduct many of the polling place surveys. Given that both the City and the Commonwealth are currently subject to budgetary constraints, this factor, too, weighs in favor of the Agreement.

### 8. Range of Reasonableness In Light of the Best Possible Recovery and the Risks of Litigation

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. As Chief Judge Friendly explained: "[T]here is a range of reasonableness with respect to a settlement ...." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972). Assessing the value of a settlement and the "best possible recovery" is particularly difficult in a case seeking injunctive, rather than monetary relief. Here, however, there can be little doubt that the Agreement provides significant, tangible benefits to class members.

The benefits conferred by the Agreement compare quite favorably to the best possible recovery that Plaintiffs could have secured and fall well within the range of reasonableness. The Agreement provides the Plaintiffs with almost all of the relief that they ultimately could have secured if they prevailed at the hearing and following appeals and if the Court, using its discretion to shape injunctive relief, afforded the Plaintiffs all of the relief they had sought. All of the

approximately 1,100 Philadelphia polling places will be subject to extensive accessibility evaluations by qualified, independent surveyors. For polling places found to be inaccessible, the surveyors will, if possible, provide specific recommendations to either make the facilities accessible or to identify specific accessible sites to which they can feasibly be relocated. If the City Defendants (through the Board of Elections) refuse to implement the recommendations (subject to certain exceptions), the Plaintiffs can request that the Magistrate Judge decide whether implementation of the recommendation would be reasonable or a fundamental alteration and either party can appeal an adverse decision by the Magistrate Judge to this Court. The Agreement also includes provisions to assure that new polling places selected by the City Defendants generally will be accessible and, if not, includes procedures that allow Plaintiffs to challenge their selection. As a whole, these provisions will assure that the City Defendants use polling places that are accessible except in those instances when doing so would result in a fundamental alteration.

The benefits of the Agreement are particularly favorable in light of the attendant risks of litigation. Plaintiffs recognize that this case presents novel and complex questions of law. While this Court's summary judgment ruling interpreted the law in a manner that was favorable to the Plaintiffs, it is not inconceivable that appellate courts might have reached contrary conclusions. Aside from the risks on the merits, perhaps the key risk of litigation in this case simply was the delay that would inevitably result from further litigation in this court and the appellate courts. Since this lawsuit was filed, more than four elections have been conducted with no relief. The sooner that the process created by the Agreement is implemented, the sooner that more Philadelphians with mobility impairments will have the opportunity to vote in accessible polling

places like their non-disabled friends and neighbors.  The risks of continued litigation --

including the possibility of adverse legal rulings and years of delay -- add to the reasonableness

of the Agreement and weigh in favor of its approval.  *See Parks v. Portnoff Law Assoc.*, 243 F.

Supp.2d at 253.

## CONCLUSION

Since all of the relevant factors weigh in favor of the Agreement as set forth above,

Plaintiffs respectfully request that the Court approve the Settlement Agreement, dismiss the

Amended Complaint with prejudice, and retain jurisdiction over the Agreement for purposes of

interpretation and enforcement.

Respectfully submitted,

Dated:  July 2, 2009       By:    /s/ Robert W. Meek
                                  Robert W. Meek
                                  PA Attorney I.D. No. 27870
                                  Robin Resnick
                                  PA Attorney I.D. No. 46980
                                  Disability Rights Network of PA
                                  1315 Walnut Street, Suite 400
                                  Philadelphia, PA  19107-4798
                                  (215) 238-8070

                                  Stephen F. Gold
                                  PA Attorney I.D. No. 09980
                                  125 South 9th Street, Suite 700
                                  Philadelphia, PA  19107
                                  (215 ) 627-7100

                                  Seth Kreimer
                                  PA Attorney I.D No. 26102
                                  3400 Chestnut Street
                                  Philadelphia, PA  19104
                                  (215) 898-7447

                                  Counsel for Plaintiffs and the Class

25

## CERTIFICATE OF SERVICE

I, Robert W. Meek, certify that Plaintiffs' Motion for Final Approval of the Proposed

Class Action Settlement, Memorandum of Law, Exhibit, and proposed Order were filed with the

Court's ECF system on July 2, 2009 and are available for viewing and downloading from the

ECF system by the following counsel who consented to electronic service:

Abbe F. Fletman, Esquire
Kevin Greenberg, Esquire
Christine E. Thelen, Esquire
Flaster/Greenberg, P.C.
Eight Penn Center, 15th Floor
1628 John F. Kennedy Boulevard
Philadelphia, PA  19103

Sue Ann Unger, Esquire
Senior Deputy Attorney General
Office of Attorney General
21 South 12th Street, 3rd Floor
Philadelphia, PA  19107

/s/ Robert W. Meek
Robert W. Meek